81 470
102 240

81 470
124 354

81 470
f141 308

COUNCIL BLUFFS LOAN & TRUST COMPANY, Appellant, v. F. A. JENNINGS *et al.*, Appellees.

1. **Attorney and Client:** AGREEMENTS OF ATTORNEYS : NEW TRIAL. An attorney may bind his client by an agreement with opposing counsel for the continuance of a cause from term to term, but no evidence of such an agreement is competent as against a party denying the same, except the statement of his attorney, or the

attorney's written agreement duly signed and filed with the clerk of the court, or an entry thereof upon the records of the court. But where such agreement may be legitimately drawn from the statements of an affidavit of a former attorney for the party against whom the agreement is sought to be enforced, and it appears that a cause has been called to trial contrary to the terms thereof, and in the absence of the opposite party, and of his attorney, a new trial thereof may be properly granted upon the petition of the party injured.

2.  ——— : ——— : ——— : PLEADING. Where an application for a new trial, made more than three days after judgment, is by motion, but the same contains an averment in which it is described as a petition, and contains statements and demands for relief which would be proper in a petition, it will be deemed sufficient, especially where objection thereto was not made in the court below.

*Appeal from Pottawattamie District Court.*—HON. N. W. MACY, Judge.

TUESDAY, OCTOBER 28, 1890.

THIS is an appeal from an order granting a new trial.

*J. Lyman*, for appellant.

*Charles Mackenzie*, for appellees.

ROBINSON, J.—This action was commenced on the fourth day of June, 1885. The petition contains two counts. The first set out as a cause of action a promissory note for the sum of four hundred and forty-eight dollars, made by defendants and one Jennie Dickson. The second set out a promissory note for three hundred and thirty-six dollars, made by Jennie Dickson, and a chattel mortgage given to secure its payment, and alleged that defendants had taken forcible and unlawful possession of the mortgaged property, and had appropriated it to their own use, and that it was of the value of twelve hundred dollars. The petition alleged that a reasonable attorney's fee was the sum of one hundred dollars, and demanded judgment against the defendants for the sum of one thousand dollars,

with interest thereon at ten per cent. per annum from June 1, 1885, and costs. At the August term, 1885, the defendants appeared and filed an answer. In it they alleged full payment of the note set out in the first count of the petition with costs, prior to the first day of the term, and that the payment was accepted in full settlement of that note, and that it was surrendered to them. The answer denied that defendants were indebted to plaintiff in any sum whatever ; denied that they had taken unlawful possession of, or converted to their own use, any goods or chattels belonging to plaintiff or upon which he had a mortgage, and denies that they had deprived him of any security. The answer alleges that defendants signed the note set out in the first count of the petition as sureties for Jennie Dickson, and that at the time they signed it she executed and delivered to them a chattel mortgage on the property described in the mortgage of plaintiff to hold them harmless as sureties, and that the mortgage so given to them was duly recorded long before the mortgage to plaintiff was given ; that, after the note described in the said first count became due, the principal having failed to pay it, defendants duly and lawfully foreclosed their mortgage, and sold the property therein described for the sum of two hundred and fifty dollars, which was paid to plaintiff ; that plaintiff advised defendants to take possession of the property under their mortgage and sell it, and was informed that it was done. Defendants demand judgment for costs. After the filing of the answer plaintiff amended its petition so as to demand judgment for the amount of the note set out in the second count of the petition, with interest, attorney's fees and costs. The cause was then continued at the August term, 1885, and from time to time until the April term, 1889. More than ten days before that term a trial notice was filed by plaintiff, the cause was assigned for trial on the fifth day of April, 1889, in the regular order, and on that day proceedings were had which resulted in a judgment for plaintiff for five hundred and eight dollars and ninety-three cents, an attorney's

fee for thirty-five dollars, and three dollars and fifty cents' costs. The proceedings were had and judgment rendered in the absence of defendants, who did not appear in person nor by attorney. On the nineteenth day of July, 1889, and during the term of court at which judgment was rendered, the defendants appeared and filed an application to have the judgment vacated, supporting the application by affidavits of defendant Jennings, and the attorney for the defendant Traver. Counter-affidavits of attorneys Lyman and Hunter were filed, and the application was submitted on the showing thus made. Before it was ruled upon by the court, plaintiff offered in open court to remit of the judgment in controversy the attorney's fee, and all interest in excess of six per cent. per annum. The offer was refused by defendants, and the application was sustained. Of that ruling appellant complains.

I. The affidavit of Jennings shows that none of the defendants resided within forty miles of Council Bluffs when the action was commenced, nor at any time thereafter; that, immediately after the action was commenced the codefendants of Jennings arranged with him to take charge of the defense, to employ an attorney and prepare the case for trial. He employed J. A. Traver, a practicing attorney of Dunlap, to appear and conduct the defense, and advised him fully of the facts in the case. After the settlement of the note signed by defendants, Jennings was informed from time to time by Traver that the cause was being continued as to the second count of the petition to accommodate the attorneys for plaintiff, and that he would give timely notice of the time of trial. Defendants had no knowledge that a trial would be demanded at the April term, 1889, nor that it had been granted until the fifth day of July of that year, when demand for the payment of the judgment was made upon them by the sheriff of Harrison county. The affidavit of Traver showed his employment by defendant as alleged by Jennings; that at that time the plaintiff was represented by the law firm of Lyman

1. ATTORNEY and client: agreements of attorneys: new trial.

& Hunter, of Council Bluffs, composed of Joseph Lyman and F. M. Hunter; that Traver and Hunter agreed that the cause should not be called for trial at any term of court unless by mutual agreement; that Lyman was a member of congress for the period of four years from the fourth day of March, 1885, and during that time the business of the firm was chiefly done by Hunter; that in April, 1888, it was agreed between Traver and Hunter that the case should not be called for trial until after he had given Traver four or five days' notice, and that Hunter should give Traver personal notice by letter of the time when Lyman & Hunter would be able to try the case; that Traver relied upon said agreements, but received no notice of the purpose of the attorneys for plaintiff to ask for a trial, that the firm of Lyman & Hunter was dissolved about March 10, 1889, and that the case was called for trial by attorney Lyman. The affidavit of Lyman shows that, so far as he had knowledge, no arrangement to continue the cause or to give personal notice of calling it for trial was ever made. The affidavit of Hunter denies the agreements claimed by Traver, but contains a statement as follows: "I further say that the only agreement or understanding I ever made or entered into in regard to such cause, with any person, was as follows: Some time in the early part of the year 1888, I had an understanding with said Traver to the effect that, whereas said cause had been mainly in the care of J. Lyman, and that said Lyman was then a member of congress, and that his term of office would not expire until March 4, 1889, I would not call the case for hearing during said Lyman's term of office in congress, but it was agreed and understood that, if at any time during the said term of office said Lyman should be at home during a term of court and could try the case, I would in that event notify said Traver, and, if an agreement could be reached to that effect, we would try the case. I never had or made any understanding or agreement of any kind in said case which was in any event to extend beyond the term of office of said J. Lyman in congress."

The alleged agreements between Traver and Hunter were verbal and it is said that they cannot be proven for that reason. An attorney has power to bind his client by agreements with respect to any proceeding within the scope of his proper duties and powers, but no evidence of such an agreement is receivable except the statement of the attorney himself, his written agreement signed and filed with the clerk, or an entry thereof upon the records of the court. Code, sec. 213 (2). It is not competent, therefore, to prove a disputed verbal agreement of that kind by the testimony of an adverse party or his attorney. *Hardin v. Railway & Construction Co.*, 43 N. W. Rep. 543; *Riegleman v. Todd*, 77 Iowa, 696; *Hiller v. Landis*, 44 Iowa, 223. But it may be proven by the statements of the attorney who made it for the person against whom it is sought to be established. Hunter was such attorney in this case, and the statements contained in his affidavit, and all legitimate conclusions which may be drawn from such statements, may be considered to establish the claim upon which appellees rely. It is clear from the statements of Hunter that an agreement not to call the case for trial during the congressional term of Major Lyman without personal notice was made. It is fair to conclude from admitted facts that the numerous continuances of the cause were for the benefit of the attorneys for plaintiff. Conceding that the agreement was not in fact to extend beyond the fourth day of March, 1889, yet it is apparent that Traver may easily and naturally have fallen into the error of believing that the case would not be called until personal notice of the intention to call it had been given him. The defendants and their attorney resided at a distance from Council Bluffs, where the court was held in which the cause was pending. We think in view of all the facts in this case the defendants were not so negligent as to be debarred from a new trial, and that the court did not err in granting it. *County of Buena Vista v. Railway Co.*, 49 Iowa, 657.

II. It is said that the application should not have been granted, because made by motion which was filed

2. ——: ——:
——: plead-
ing.

more than three days after judgment was rendered. Code, secs. 2837–8. The application was in fact in the form of a motion, but it contains an averment in which it is described as a petition, and contains statements and demands for relief which would be proper in a petition. If the objection now made had been presented in the court below we think it might have been properly overruled, and the application treated as by petition. *Town of Storm Lake v. Railway Co.*, 62 Iowa, 218.

The order of the district court sustaining a motion for a new trial is AFFIRMED.