MARY J. LAWLER, Administratrix, Appellee, v. ROMAN CATHOLIC
MUTUAL PROTECTIVE SOCIETY, Appellant.

**ORIGINAL NOTICE:** Service—Local Lodge. An action against an
incorporated fraternal beneficiary society on its policy of insurance
may be brought by service on the officers of the local branch or
lodge through which the policy was issued, and through which
the society makes its collections of premiums.

**JUDGMENT:** Default—Refusal to Set Aside. Knowledge on the part
of the defendant that plaintiff was unquestionably intending to
bring action on his claim at the term of court in question may go
a long way in justifying the trial court in refusing to set aside the
default.

*Appeal from Webster District Court.*—E. M. McCALL, Judge.

MARCH 11, 1924.

REHEARING DENIED JUNE 28, 1924.

ACTION to recover upon a certificate of insurance. There
was a judgment against the defendant by default. Fifteen days
later, and during the same term of court, the defendant ap-
peared, and filed an application to set aside the judgment and
to grant a new trial. Such application, after a full hearing on
the merits, was denied by the district court, and the defendant
has appealed from such order.—*Affirmed.*

*Sawyer & Norman* and *Johnson & Martin,* for appellant.

*Healy, Thomas & Healy* and *Mitchell & Files,* for appellee.

EVANS, J.—I. The application for a new trial was predi-
cated substantially upon two grounds:

1. That the purported service of original notice of the suit
was void, and therefore conferred no jurisdiction upon the dis-
trict court.

2. That the defendant was prevented by casualty and mis-

fortune from obtaining knowledge that a suit against it had been commenced.

Taking up these grounds in their order, it appears that David Lawler, to whom a certificate of insurance had been issued by the defendant in 1881, died in April, 1922. The suit was brought upon such certificate. The defendant is a fraternal beneficiary society, and purports to be duly incorporated. Service of original notice.

1. ORIGINAL NO-
TICE: service:
local lodge.

was made upon it by serving Conway, president of the local branch of the defendant society, such local branch being known as No. 25, St. John's, Fort Dodge, Iowa. The defendant's principal place of business is at Fort Madison, Iowa, and its general secretary is Kern. The question at this point is whether the plaintiff had statutory warrant for serving an original notice upon Conway, as a legal representative for that purpose. The statute, if any, upon which the plaintiff does and must rely is Section 3532 of the Code of 1897, which provides:

"Sec. 3532. When a corporation, company or individual has, for the transaction of any business, an office or agency in any county other than that in which the principal resides, service may be made on any agent or clerk employed in such office or agency, in all actions growing out of or connected with the business of that office or agency."

Did the local branch, through its officials, constitute a local office or agent of the defendant company, within the meaning of the foregoing section? In view of the existing judgment, the burden was upon the defendant, as an applicant, to show that it did not. The articles of incorporation are not in evidence. We are, therefore, without specific or direct evidence as to just what the relation is between the general office and the local branch, or just what the function of the local branch is. There is evidence, however, from which such relation and function may be to some extent implied. The certificate sued on is as follows:

"Constitution Amended Nov. 5 and 6, 1879.
"Organized at Iowa City, May 21, 1879.
"Incorporated November 20, 1879.

"ROMAN CATHOLIC MUTUAL PROTECTIVE SOCIETY OF AMERICA.

"CERTIFICATE OF MEMBERSHIP.

"This Certifies, That David Lawler Born August 29th, 1836, is a member of the Roman Catholic Mutual Protective Society of Iowa, having been received in due form by Local Branch, No. 25 St. John's at Fort Dodge, Iowa, and is entitled to all the benefits of membership so long as he conforms with the rules and regulations prescribed by the Charter, Constitution and By-Laws of this Society.

"The Society pays at his death Two Thousand Dollars, when the Society numbers two thousand members, but until that time it shall be one dollar for each and every member; but the society shall not be in any case liable for more than One Dollar for each member in good standing.

"Date Jan. 30, 1881.

"N. F. Scallum, President.

"M. J. Farley, Gen'l Sec'y.

"J. H. Ryan,

"President Local Branch.

"C. Laufersweiler,

"Secretary Local Branch."

A witness for the defendant testified as follows:

"This society is a fraternal beneficiary society, and organized under the chapter of the Iowa statutes providing for the organization of fraternal beneficiary societies. It has separate lodges or branches, with a ritualistic form of government, as required by statute. The members are issued a certificate of membership in the society, which corresponds with the policy in an old-line insurance company. Instead of having lodges in the various towns, they are called branches. These branches are made up of members of the society, consisting of groups located in a particular town and surrounding vicinity, and the local group elect all of their officers who deal between this group or branch and the general society. The home office of the organization is at Fort Madison, Iowa."

It will be noted from the certificate quoted, that the mem-

bership of Lawler came through the local branch; that he was received as a member by the local branch; that the certificate became effective by the signatures of the president and the general secretary of the society and of the president and the secretary of the local branch. It further appears that all assessments of members are collected and remitted by the local branch through its secretary. It is true that the membership is small; and that the branch, as such, has no regular meetings, and meets only upon call, and has had no meeting for ten years; and that the activities of its officials are few. The fact is that it maintains its organization as such; that it keeps books; that it maintains correspondence with the society; and that the society deals with it as a part of its own organization. The fair implication of the record before us is that the local branch is a part of the defendant's plan of organization, and that it is intended as the local agency through which it comes in contact with its individual members, and through which it acquires its members, and through which it collects all dues from its members. Section 3529, Code Supplement, 1913, and Code Sections 3530 to 3532 provide methods of serving notice upon corporate bodies. Of these, Section 3532 is the broadest and most general in its scope. The general policy of the statute is that an incorporated society must become tangible to a suit in the county where it transacts business, and may become so through the same agency through which it transacted the business. To require a plaintiff in such a case to carry or send his original notice hundreds of miles distant for the purpose of service is quite repugnant to the clear general policy of the statute. If the present Section 3532 fails fairly to cover the present case, such failure is the result of legislative inadvertence or oversight.

The defendant society has transacted business in Webster County for more than forty years, in the acquisition of members and in the delivery of certificates and in the collection of dues; and it has done it all, be it much or little, through the local branch. Concededly, it is suable in that county. Its local branch had two officials, a president and a secretary. Such officials (not the present incumbents) were signatories to the certificate sued on. We think it was permissible to the plaintiff to serve her

original notice upon either of them.  She did serve it upon the
president, who delivered the same forthwith to the secretary of
the local branch.  It was a good service, and conferred juris-
diction upon the court.

II.  Did the trial court abuse its discretion in refusing a
new trial?  The ground of appeal to this discretion was that
the company proper, at its headquarters, received no notice of
the suit until after judgment was entered.  For
some reason not well explained in the record,
the local officials did not send the original notice
to the home office, nor did they advise such office of its service.
The explanation of the secretary is that he was expecting to hear
from the general secretary.  He evidently inferred that the gen-
eral secretary would receive the same notice that he had.  This
mistaken inference on the part of the secretary had in it a qual-
ity of misfortune, so far as the society was concerned, in that
it operated to withhold from it a communication to which it was
entitled from its own agency.  If this were all, it would make
a strong call upon the discretion of the court to grant a prompt
application for a new trial.  But, on the other hand, it appears
that, for some time prior to suit, negotiations were carried on
by correspondence between plaintiff's attorneys and the general
headquarters.  The general officers at headquarters rejected the
claim definitely, and denied liability thereon.  They were ad-
vised definitely in this correspondence that the plaintiff would
bring an action in Webster County in its August term of court.
This information was imparted three weeks before the original
notice was served; whereas the original notice was served three
weeks before the first day of the August term.  The officers of
the society must be presumed to have known that the society was
subject to service upon its local branch in Webster County.  It
would have been a simple precaution against possible misunder-
standing on the part of the local officials for the general secre-
tary to advise the local officials of their duty in the event of a
suit.  This failure on the part of the general secretary was not
a high degree of negligence, but it was something less than dili-
gence.  If there had been any connivance or collusion or any
sinister conduct on the part of plaintiff or her attorneys to bring

2. JUDGMENT: de-
    fault: refusal
    to set aside.

about such a situation, a different question would be presented. There was nothing of that kind. It is claimed in argument that the local secretary was misled by a casual conversation with one of plaintiff's counsel. We have carefully scrutinized the evidence in that regard, and find nothing worthy of more extended notice. The counsel in question was justified in supposing that the original notice had been sent to its destination. The conversation complained of could have no significance except upon the supposition that such counsel knew that the local secretary had not advised the general secretary of the service of notice.

It goes without saying that the trial court has a considerable discretion in the matter of setting aside a judgment by default. We have frequently said that we draw the line more closely upon such discretion when the application is refused than when it is granted. We should have been quite as well satisfied with the record in this case if the application had been granted. The power of discretion, however, is vested in the district court, and we are not justified in encroaching upon it, such as it is. In view of the advance notice given to the defendants of the purpose of plaintiff to bring a suit in the August term, we cannot unduly minimize the effect of such circumstance upon the discretion of the court, nor say that such discretion was abused. We are constrained, therefore, to affirm the order of the trial court.— *Affirmed.*

ARTHUR, C. J., PRESTON and FAVILLE, JJ., concur.