A. C. HATT, Appellee, v. T. A. MCCURDY et al., Appellants.

No. 43870.

JUNE 15, 1937.

Kindig, Faville & Mathews, for appellants.

Ralph A. Oliver and Virgil O. DeWitt, for appellee.

SAGER, J.—Appellee, who is the assignee of a claim for contribution on account of certain payments made on a note by the appellants McCurdy, brought action to recover the sum of $1,850. The claim of contribution arises from the fact, as is alleged, that comakers of a certain note with the McCurdy's paid thereon $8,000, and that the proportion of the payment which should have been made by appellants was the amount sued for herein. The original obligation and the mortgage securing the same were attached as exhibits to the appellee's petition, and, on proper allegation, an attachment issued. A special appearance challenging the sufficiency of the original notice having been overruled, appellants filed a motion for more specific statement, requiring appellee to set out a copy of the assignment upon which the action was based, if such assignment was in writing.

On June 3, 1936, appellee set up the assignment, and on June 16, 1936, appellants filed their answers. That of T. A. McCurdy alleged a general denial; that he had paid more than his share of the original indebtedness, and asked for an accounting which he alleged would disclose an indebtedness due appellants of $2,000, for which sum he asked judgment. The wife's separate answer, in addition to the general denial made by her husband, alleges that she signed the original note and mortgage only to release her dower and that she received no consideration; that she had no part in the purchase of the property for which the original note was given; and that as a consequence she never had any consideration for the note; and, moreover, that the note was obtained by deceit and fraud. She therefore asked that the action be dismissed as to her, and that she have judgment for wrongful issuance of the attachment.

This was the status of the case on July 13, 1936, on which

date there was received by Wormley & Wormley, attorneys at Kingsley, Iowa, then representing the defendants-appellants, a letter (Exhibit 1) bearing date of July 10, 1936. It referred directly to this case and purports to have been written by the clerk of the district court, by his deputy. It was addressed to "H. W. Wormley, Attorney", and stated:

"We have been instructed to notify you that the above-entitled case has been set for hearing on Tuesday, July 14th, 1936, at 10 o'clock A. M., before Judge Newby."

For convenience, attention is called to the fact that July 10, 1936, was Friday and July 14, was Tuesday.

According to the record this letter was opened by John Wormley, father of his associate attorney who was referred to as Henry. John, in a letter bearing date July 11, 1936 (Saturday), wrote to Hatt (plaintiff-appellee), acknowledging the receipt of the letter advising of the date of the setting of the case, and:

"I am sorry to have to advise you that Henry is up in Minn. on an accident matter and will not be back until the latter part of the next week. My health and age does not permit me to engage in court work.

"I would suggest that you arrange a date for the first of next week or if you wish to leave the date open I will have Henry come over and see you as soon as he gets back and you can then agree upon some date."

This letter (designated Exhibit 2) was mailed in an envelope (Exhibit 3) which bears the government postmark as of July 13, 1936, this being Monday.

On July 14, 1936, at 2 o'clock p. m. the case came on for hearing before Judge Newby, whereupon the trial court announced that the case had been, on Monday, July 6, assigned for hearing on July 14, at 10 o'clock a. m. If we do not misunderstand the record, the appellee had appeared on July 6, 1936, with his witnesses, although we find nothing to indicate that the case was expected to be reached for trial on that day. The trial court in making its record recited that on the 10th day of July, the court by letter notified appellants' attorneys (referring to the letter already spoken of as Exhibit 1) that the case would come up at 10 o'clock on the 14th. It appears that the bailiff

of the court by phone called the office of appellants' attorneys on the 13th. There was then in that office no one except Mc-Cord, who shared a part of the office, and the call was transferred to the home of Attorney Henry Wormley, whose wife said that this attorney wished to attend a funeral at his home in Kingsley at 9 o'clock on the 14th of July. Appellants' attorney not appearing up to 11 o'clock of the 14th, the case was postponed until 2 o'clock that afternoon. Meanwhile, counsel for appellee received, as did the court, the letter referred to. as Exhibit 2, in which was contained the information that counsel for appellants was in Minnesota on some matter of business. The court then made this finding:

"It seems there is some misapprehension of facts or somebody is mistaken. The Court is inclined to believe that counsel is not in Minnesota from some information he has, the Court and attorneys for the plaintiff have heard nothing from counsel for the defendants, and for some reason not given to the Court or any one interested in the case is not appearing."

Thereupon appellee was directed to make proof, and upon such proof the court announced:

"Defendants default for want of appearance and counsel for plaintiff draw up a judgment and decree."

In compliance with this finding the decree was entered on the same day. This decree recited the facts already set out, and in addition, that defendants-appellants "though three times solemnly called, appearing not nor anyone for them." The decree also finds the notice sufficient, and that the appellants appeared and filed pleadings and answers by their attorneys of record. The decree continues to sustain the attachment, enters judgment, and contains certain formal provisions which need not be considered.

On July 24, 1936, still during the term in which the default judgment was entered, appellants asked that the default and judgment be set aside; and, as reasons therefor, alleged that the case was at issue by the answer of the appellants, and that the appellants were then ready, and had been, to try the case, and had a good defense. The motion, among other things, charged that the court's ruling requiring the appellee to amend was made on the 23d day of May, but not complied with until June 3

(this presumably to suggest the inference that the plaintiff-appellee had himself not been overly diligent). Appellants asserted that following the amendment made by plaintiff-appellee, an answer was filed in the time agreed on between the appellee and Attorney Henry Wormley; that the matter was not then assigned, nor were they advised by court or counsel of any intention of having the case heard before the next regular term; that the cause had not been at issue when the regular assignment of the term was made, but that it was later singled out without advice, knowledge, or consent of the appellants or their attorneys that the matter would be brought on for trial; and the first advice to the latter effect was the letter received on July 13, 1936. It was alleged that the letter Exhibit 1, while dated July 10, 1936, was not in fact received by J. M. Wormley until the 13th, when he wrote the letter saying that Henry was out of town. The motion alleged that the letter Exhibit 2, while dated July 11th was actually written on the 13th; it complains that the entry of default was contrary to custom, usage, and practice in that district; and that such assignment was contrary to such custom and without ascertaining whether the assignment of the case for the time stated would suit the convenience of counsel and parties interested; that appellee knew that J. M. Wormley was a man of advanced years, of failing health, and had not been engaged in active trial work for over five years. It is therefore inequitable, the motion charges, to default the appellants and to take advantage of them, particularly for the reason that plaintiff-appellee was not entitled to recover. It is also alleged that Attorney Henry Wormley, relying upon what he assumed to be the status of the matter, made no attempt to advise the defendants-appellants that the case had been assigned; and that as a consequence the defendants-appellants had no knowledge that they were expected or required to appear and had no chance to employ other counsel, and that their failure to appear was entirely without fault on their part. The affidavit of John Wormley supports the allegations of the motion and says that, believing that a postponement would be made as requested in Exhibit 2, he made no effort to advise the appellants of the setting of the case, but did in all good faith inform his son and associate Henry that he (John) would take care of the case and would have it postponed until he returned and to a time when Henry could confer with plaintiff-appellee for a convenient day for trial. His

affidavit alleges that, on being told by Mrs. Henry Wormley that someone had inquired about the matter, John told her that he had taken care of the case and that it would be postponed until Henry could get back and look after it himself. Henry Wormley, by affidavit in support of the motion to set aside the default, asserts that he was not consulted as to a convenient date for trial and had no notice of its being specially assigned until advised by his associate John, by whom he was informed that arrangements had been made for postponement. Then follow these allegations of the affidavit which have a direct bearing on the question before us:

"That on the date on which said cause was assigned for trial and a hearing had I was out of the State and engaged in attending to other urgent business; that I did not notify said defendants of said hearing and acting upon the information given me by J. M. Wormley did not attend court on the date the plaintiff took his default.

"That this affiant is a resident of Plymouth County, Iowa, and it has been the practice and custom in the courts of Woodbury County, Iowa, so far as he knows, for the parties to agree as to the date of trial in any cause not assigned at the regular assignment at the commencement of the term; that counsel was surprised in view of his experience as a practicing attorney when he was advised by J. M. Wormley of said default, entered in his absence and without opportunity to be heard on the merits; that said attorney has practiced for 13 years and has never been defaulted heretofore during all of the time he has practiced and has not been in default or refused and neglected to try a cause when reached for trial in the court of the Hon. Miles W. Newby."

The affidavits of appellants attached to the motion allege the employment of Henry Wormley to look after their interests, and that they had been told by him that he would do so; that they were advised by no one that the case had been set for trial, and that they did not know of the judgment by default until notified by their attorneys several days after it was entered. On September 14, 1936, plaintiff-appellee filed a resistance to the motion which, in its essence, is that the showing made was not sufficient as an excuse, and that there is no proper showing of a meritorious defense; that the failure of defendants-appellants

and their attorney to appear was not due to mistake or inevitable casualty "but was apparently an effort on the part of said defendants (appellants) to delay and prevent the trial of said cause." The resistance recites the regular assignment of the cause, and that, while by rules of practice in that court the attorneys were bound to take notice of an assignment, appellants' attorneys had other notice through the medium of Exhibit 1, which in the usual course of mail would have reached the home of appellants' attorneys and been delivered on July 10 or 11. The resistance speaks of the notification by the bailiff by a telephone call to the Wormley office and her talk with Mrs. Wormley; and that notwithstanding all this there was no appearance. Paragraph 8 of the resistance alleges, on information and belief, that Attorney Henry was in Kingsley on July 13 or 14, and that he was not absent from the state as alleged in the letter and the affidavits attached to the motion; that attorneys for appellee had in fact certain witnesses who knew of the presence of this attorney in Kingsley on July 13 or 14, but such witnesses declined to make affidavits to that effect. Attached to the resistance is a certified copy of the minutes of the town council of Kingsley, dated July 13, 1936, which, in addition to matters not necessary to be considered, states:

"July 13th. 1936. The Town Council of Kingsley, Iowa, met on July 13th, at Clerk's office with Mayor H. W. Wormley presiding * * *."

The affidavit of Derby, an undertaker at Kingsley, says that he saw Henry Wormley in Kingsley between 9 o'clock a. m. and 12 o'clock noon on Tuesday, July 14, 1936.

At a hearing on the motion to set aside the default, held on September 18, 1936, Attorney John Wormley was called as a witness, and supports in detail the allegations of his own affidavit and of the motion, so far as he could be expected to have knowledge of them. He explained that he did not see Exhibit 1 (letter from the clerk) until the morning of July 13, and he explained that the dating of Exhibit 2, July 11, was a mistake, the letter actually having been written on July 13. He saw his son Henry the morning of the 14th, and expressed surprise at seeing him, and remarked, "You must have changed your mind," to which Henry responded that he "came back from Le Mars to look after a council meeting." At that time John told Henry

that he had taken care of the McCurdy case and that it would need no attention until Henry got back. He says that he did not notify the defendants-appellants themselves because he had "perfect faith that the matter would be postponed," and further, "I had no idea that there would be any question about the date. I didn't have the slightest idea there would be any question about continuing this case."

This witness testified that he had not seen Henry from some time Saturday, July 11, until Monday, July 13. It was at this latter time that he called the latter's attention to Exhibit 1. He did not show him Exhibit 2, just told him about the letter and said he had taken care of it, to which Henry responded, "I have got to go back to Minnesota." No questions were asked as to what arrangements had been made, but Henry was assured that the matter of continuance had been arranged. By this the witness meant that he assumed that the letter Exhibit 2 had taken care of the situation, and when Henry's wife called he told her, too, "You don't need to pay any attention to that. I have taken care of that."

McCord, a justice who officed with the Wormleys and who caused the telephone call to be transferred to Mrs. Wormley, said that he had not seen Henry since some time Saturday morning and that he did not see him again until Tuesday, between 10 and 11 o'clock, after the Timmons funeral. At that time (the 14th) the witness met Henry at the office, or outside. The attorney then had his brief case in his hand and said he was going to Minnesota. The witness apparently had no knowledge of what the telephoning was about.

Henry Wormley, the attorney who appears to have had the active charge of the case, said that he first learned on the morning of July 14 that the McCurdy case had been assigned for trial. At this time he was assured by his father that arrangements had been made by which the case would be postponed until Henry returned, which statement he naturally believed, and because of that belief he did not appear at the trial. He left his office on the morning of July 13, telling his father that he was on his way to Minnesota, that on his way he would stop off at Le Mars and attend to some business there and then go on. This was the last that passed between these attorneys until July 14, when the talk was had about the postponement. He left for Le Mars Monday morning, transacted business there which took un-

til late in the afternoon, and instead of going on to Minnesota he returned to attend the town council meeting, which he said was important because this was the session at which it was to be determined how much was to be levied. At this time he knew nothing about the case having been assigned. The next morning, the 14th, he attended a funeral, and, after hearing what his father said about the postponement, assuming it was correct left for Minnesota, leaving Kingsley about 10:38 in the morning. At this time he knew nothing of the bailiff or anyone else trying to get him. On cross-examination this witness explained the statement of his affidavit that he was in Minnesota on the 14th by alleging that he was in fact out of the state at 2 o'clock, though having been in Kingsley in the morning. At any rate, if he was not out of the state at precisely 2 o'clock, he was on the way out, and the claim to the contrary was a mere quibble.

The only witness called by plaintiff-appellee in resistance of the showing made was Mrs. Florence E. Rollins, the court bailiff. She remembered making the call to the office of Wormley & Wormley at Kingsley at about 2 o'clock in the afternoon of July 13, this at the request of appellee and his attorney De Witt and upon orders of the court. She did not know who it was that answered her call, but was told by that person that Mr. Wormley was not in. She told the party, whoever he was, that an important case was coming up, but did not ask that person to notify Wormley to that effect. The call being transferred to someone the witness took to be Mrs. Wormley, she was told: "I don't think he can be over there, we have to go to a funeral in the morning." She said: "It is necessary for Mr. Wormley to be here and the court will expect him."

Following this the court entered the ruling denying the motion to set aside the default from which this appeal is taken.

This case presents the oft-recurring question as to when a default should or should not be set aside. No one knows better than the busy lawyer the many occasions on which oversight, inadvertence, or misunderstanding beset his path to make his profession, honorable as it is, not always a bed of roses. The question we have to decide is one not without much difficulty. This difficulty arises from various reasons, among which may be stated these: first, matters of practice must in many particulars be left to the discretion of the trial court; second, when should it be held that the discretion necessarily vested in the trial court

has in a given case been abused (we use the word "abused" in a strictly technical and legal, and not in an invidious, sense); third, how far shall those habits, customs, or usages of the trial practice which have grown up among the busy members of the profession be permitted to mitigate the almost intolerable conditions which would prevail if a strict and literal application of the statutes and rules regulating general pleading and practice was to be made? To these may be added the various degrees of strictness insisted upon by attorneys in the different judicial districts of the state in the application of such rules, and the views which different trial judges have as to how closely the rules of practice and procedure should be followed. What in one district may be regarded as crowding to the limit the exchange of professional courtesies, may in another be regarded as a commonplace of everyday practice. Trial judges, of necessity and because of the environments in which they practiced before their elevation to the bench, look upon questions of the sort before us in the light of their own experience; and in determining questions like this they are compelled to act with only such help as they can get from the rather uncertain rules that are the best that can be formulated for questions of this sort.

 That this court has not been able to lay down a rule which will apply to every case is inherent in the very nature of the question; hence the view generally expressed in the numerous cases upon which we have passed is as stated in Tate v. Delli, 222 Iowa 635, at page 640, 269 N. W. 871, 873, per Richards, C. J.:

"We think the trial court's finding for defendant on that question has support in our prior holdings. In applying the general rules above outlined, it has been said that each case must be determined to a great extent upon its own circumstances. Rarely do two cases exhibit identical facts."

See, also, Ferris v. Wulf, 216 Iowa 289, at page 291, 249 N. W. 156, 157, where we said, by Albert, J.:

"The fundamental rule is that each case should be tried on its merits. First National Bank of Newton v. Federal Reserve Bank of Chicago, 210 Iowa 521, 231 N. W. 453, 69 A. L. R. 1329."

See, Farmers Exchange Bank v. Trester, 145 Iowa 665, 124 N. W. 793; Reilley v. Kinkead, 181 Iowa 615, 165 N. W. 80;

984

First National Bank of Newton v. Federal Reserve Bank of Chicago, 210 Iowa 521, at page 527, 231 N. W. 453, 69 A. L. R. 1329.

■■■ And to entitle a party to set aside a default (culpable neglect or inattention being absent) all that is required is "a prima-facie showing." Brock v. Ellsworth Bank, 192 Iowa 1042, 186 N. W. 3, 5, quoted with approval.

■■■ Under the principles announced in the foregoing and other cases which might be cited, we have said in Ferris v. Wulf, supra, 216 Iowa 289, at page 291, 249 N. W. 156, 157:

"The controlling point in the various cases seems to turn and be controlled by the fact situation as to whether the party against whom the default is entered is at fault or negligent in taking care of his case, as is pointed out in Hueston v. Preferred Accident Ins. Co., 161 Iowa 521, 143 N. W. 566, and many other cases. We also said in the case of Lawler v. Roman Catholic Mutual Protective Society, 198 Iowa 233, 197 N. W. 633, that, while the ruling on a motion of this kind is discretionary with the trial court, the record will be more carefully scanned when reviewing the same when the application to set aside the default is refused than when it is granted."

In a case in which the facts seem much stronger against the party asking that a default be set aside, in sustaining the trial court in so doing, we said, in Clarke v. Smith, 195 Iowa 1299, at page 1300, 192 N. W. 136, 137:

"The evidence quite satisfactorily shows that the attorney employed by Clarke to defend in the original action utterly failed to give the matter any attention, and that due to oversight and lapse of memory on his part caused the judgment by default to be entered. Carroll himself testified: 'I have no independent recollection, even now, of Mr. Clarke consulting me about this case. * * * The case, as I say, entirely escaped my mind.'

"It further appears that the attention of Attorney Carroll was called to the case in Judge Wolfe's office sometime prior to the entering of the default. At that time Carroll told Judge Wolfe: 'I don't believe I am in that case. I didn't think I was. I didn't have any recollection of being in the case at that time.' Carroll promised in a later conversation with Attorney John

Wolfe that he would phone Mr. Clarke to ascertain whether or not he was in the case. He forgot to do this. He never obtained a copy of the petition until after the judgment was obtained, although he was granted 10 days to plead as shown by the court record, but he had no personal recollection of that event."

As has been pointed out, the question here involved is ordinarily one of discretion in the trial court. But with the general rule that "every party to an action shall have his day in court," we said, in First National Bank v. Federal Reserve Bank, supra:

"It is the policy of the law that every cause of action should be tried upon its merits,—that every party to an action shall have his day in court. Manifestly, therefore, appellate courts are more inclined to reverse for a failure to set aside a judgment taken by default or on ex-parte hearing than where such judgment has been set aside and a trial on the merits granted. Moreover, as was said by this court in Barto v. Sioux City Elec. Co., 119 Iowa 179, 183, 93 N. W. 268, 270:

" ' * * * it has ever been the purpose of the courts to relieve from accident, mistake, and misfortune not brought about through neglect or inactivity. * * * Courts should and do favor the trial of causes upon their merits, and, if failure to secure such trial is not due to the supinity or inattention of the party in default, he should, upon a proper showing of merits, be given an opportunity to be heard.' "

We said further in the same case (quoting from Council Bluffs L. & T. Co. v. Jennings, 81 Iowa 470, 46 N. W. 1006):

"Conceding that the agreement was not in fact to extend beyond the fourth day of March, 1889, *yet it is apparent that Traver* (one of the attorneys for the defendant) *may easily and naturally have fallen into the error of believing that the case would not be called until personal notice of the intention to call it had been given him.*"

And again in the same case (quoting from Reilley v. Kinkead, 181 Iowa 615, 165 N. W. 80):

"So far as the defendant personally is concerned, we think he can be charged with no fault or neglect in depending upon his counsel, whom he had employed for that purpose, to take such action in court as was necessary to protect his interests.

\* \* \* The courts are not disposed to be overtechnical in denying hearing to a party who, in good faith, and without negligence, desires and intends to try his case upon its merits. It has been said by us that 'a trial on the merits should be had in all cases where it is possible, and particularly where there is failure to show negligence on the part of the party in default.' Logan v. Southall, 137 Iowa 372, 374, 115 N. W. 19, 20. It has also been held that the mistake of the attorney, even though it relates to a matter of which he is required by law to take notice, may afford good ground for excusing a default. Jean v. Hennessy, 74 Iowa 348, 37 N. W. 771, 7 Am. St. Rep. 486. \* \* \* It has often been said by this and other courts that courts should be disposed to give a party a trial on the merits of his case if application to set aside the default be promptly made and the party is not clearly shown to have been negligent. McQuade v. Chicago, R. I. & P. R. Co., 78 Iowa 688, 42 N. W. 520, 43 N. W. 615.''

Applying the principles announced in the foregoing cases, we are constrained to hold that the court erred in not setting aside the default and judgment entered in this case. In doing so, we do not overlook the claim made by appellee that there was a deliberate attempt on the part of appellants' counsel to postpone the trial. Neither do we overlook the observation of the court, that: ''The Court is inclined to believe that counsel is not in Minnesota, *from some information he has* \* \* \*.'' What this information was does not appear. In any event, the record satisfies us that the appellants themselves were guilty of no negligence whatever. They had employed reputable counsel to protect their interests, and whatever may have been the true inwardness of the fact situation, they, at least, were not to blame. We hold they should ''have had their day in court,'' and that the motion to set aside the default should have been sustained, and this without any thought of criticizing either court or counsel.

The judgment of the trial court is, therefore, reversed.—Reversed.

RICHARDS, C. J., and DONEGAN, KINTZINGER, PARSONS, MITCHELL, HAMILTON, and STIGER, JJ., concur.