GORDON R. LUNT et al., Plaintiffs, Appellees, v. ELBA LUNT VAN GORDEN et al., Defendants, Appellants, WANDA LUNT et al., Defendants, Appellees.

No. 44425.

OCTOBER 18, 1938.

REHEARING DENIED APRIL 7, 1939.

Cross & Hamill, for appellants.

Wagner & Yoder, for appellees.

RICHARDS, J.—On January 3, 1910, one Henry W. Lunt conveyed in trust a considerable amount of land in Iowa and Missouri, one part of the trust instrument providing that the trust was to continue during the natural life of the trustor, and was to terminate at the death of the last surviving child of the trustor, or perhaps upon other events that are not considered on this appeal. On October 29, 1936, one of the beneficiaries of the trust, a grandson of the trustor, commenced a suit in equity in Mahaska district court for the partitioning of the land. Another beneficiary and a trustee later joined as plaintiffs. One of the trustees, and a number of the beneficiaries of the trust, including surviving children of the trustor, were made defendants. To the petition, those defendants who are appellants herein

filed a motion to dismiss, which was sustained on January 7, 1937. On January 12, 1937, plaintiffs filed a substituted petition alleging inter alia that by oral consent of the children of the deceased trustor and of the trustees the trust had fully terminated. The defendant-appellants filed a motion to strike certain other portions of this substituted petition which motion was overruled on March 24, 1937. From this ruling an appeal was taken by defendant-appellants, and same was submitted in this court on September 30, 1937. The opinion in that appeal was filed October 26, 1937, and is published in 224 Iowa 4, 275 N. W. 579. Our holding was that the appeal be dismissed on the ground that the order overruling the motion was not one from which a separate appeal might properly be taken. Procedendo from this court was filed in the Mahaska district court on October 29, 1937. But on September 24, 1937, the district court had signed a decree that entered a default against defendant-appellants and decreed that the lands be partitioned by a sale thereof. This decree had been filed on September 25, 1937. On October 30, 1937, defendant-appellants filed their answer in the partition action. Defendant-appellants first learned of the default decree subsequently to the filing of the opinion and subsequently to the preparation of the answer. Their first knowledge was that acquired by their attorneys on October 30, 1937, when the answer was taken to the clerk's office to be filed. On November 10, 1937, defendant-appellants filed in the partition action a petition to set aside the default decree and to reinstate the case. Plaintiffs filed answer on January 14, 1938. The trial was had on January 24, 1938, resulting in an order that the petition be denied and dismissed. It is the appeal taken by defendant-appellants from that order that is now before us for our consideration.

In filing their petition to set aside the default the defendant-appellants were invoking the provisions of section 12787, Code 1935, which so far as material on this appeal reads as follows:

"12787. Judgment vacated or modified—grounds. Where a final judgment or order has been rendered or made, the district court, in addition to causes for a new trial hereinbefore authorized, may, after the term at which the same was rendered or made, vacate or modify the same or grant a new trial: * * *

"5. For unavoidable casualty or misfortune preventing the party from prosecuting or defending. * * *."

In their petition defendant-appellants alleged, inter alia, that they at no time delayed the trial of the cause; that they at all times have been trying in good faith to make up the issues therein; that the issues tendered by their answer are that the land is held in trust and that the trust period has not expired, and that no consent has been given by the beneficiaries or trustees to an earlier partitioning, and that therefore plaintiffs are without any rights or jurisdiction to have the land partitioned and sold; that said facts will be established on the trial and constitute a good defense to plaintiffs' substituted petition. It was further alleged that without any trial notice being filed and without any notice to counsel for defendants, plaintiffs presented and had the court sign a final order in said cause, granting the relief plaintiffs asked. The following is a quotation from the petition:

"That it is not the custom, usage nor practice of this court to take up cases for final disposition in which counsel has appeared in good faith and filed pleadings without notifying counsel that it is not the practice nor the custom of this court to take up and finally dispose of cases in which counsel has appeared and issues have been tendered without the filing of a trial notice, and the said final decree in this cause was signed by the court and entered inadvertently and inadvisedly and without the knowledge of any of the counsel for defendants.

"At all times since December, 1936, these defendants have appeared by counsel; that W. H. Keating one of the counsel for defendants, is a resident of Mahaska County, Iowa, and a member of the Mahaska County bar; that he has been in active practice at said bar for many years and has an office in Oskaloosa, Iowa, equipped with a telephone, where he could easily be reached from the Clerk's office; that no trial notice was filed of the hearing of this cause; that no notice, oral or otherwise, or telephone communication was given to W. H. Keating nor to either of the counsel for these defendants, and said counsel had no knowledge of the making, signing or filing of said decree until October 30, 1937.

"That these defendants in good faith employed regular practicing attorneys at the bar of this state to represent them

in this cause, and have depended upon said attorneys to represent them and to present to this court their defenses herein, and these defendants have been guilty of no laches nor negligence in presenting their case to this court, and desire to present the same on the merits and not to be defaulted out without their day in court.''

The allegations set out in the above quotation from the petition were established by the evidence introduced in the trial, excepting that there is controversy with respect to the customary usage and practice alleged in the first paragraph of the quoted portion, and excepting that as hereinafter shown, plaintiffs controvert the allegations with respect to defendant-appellants having been free from laches or negligence.

Defendant-appellants introduced the testimony of six attorneys who had practiced for varying numbers of years in Mahaska district court, during which time they had been residents of that county. Their testimony was to the effect that it had been and is the general custom and practice of attorneys practicing in that court, before taking a default, to inform opposing counsel of the intention so to do, in cases where such opposing attorney has appeared for defendants or other parties. Plaintiffs have offered no testimony to the contrary. In argument, however, they point out that on cross-examination some of the attorney-witnesses stated that there are attorneys practicing in that court who have been known to take defaults, especially against certain other attorneys, even though they may have appeared. One of the attorneys testifying was W. H. Keating, of counsel for defendant-appellants. From his testimony, which was uncontradicted, it appears that as between himself and McCoy & McCoy, the plaintiffs' attorneys who procured the default decree, there had been for many years continued observance of the custom or practice as to which the six attorneys testified. Neither had taken a default in any case in which the other had appeared, without first advising the other of the purpose so to do. There had been for many years a particularly close, and personal and friendly relationship between Keating, who was past 80 years old and who had practiced law for 52 years, and the two members of the firm of McCoy & McCoy. The procuring of the default decree by McCoy & McCoy was the first departure, and without any warning, from long years of observ-

ance by and between Keating and the McCoys of the general practice to which the witnesses testified.

Upon the whole record we think it must be said that the practice mentioned by the attorney-witnesses was a general one, and we are loath to say that, because there may be attorneys who in some certain instances have not observed it, and who toward certain other attorneys are prone to exhibit a spirit of "dog eat dog" as expressed by one of the witnesses, there is room for saying that the practice was not general as testified by the witnesses. The exceptions were of such a limited and personal nature and were so insignificant compared with the volume of business the court transacted during the period covered by the testimony that we are nevertheless convinced the attorneys were speaking the truth when they testified as to what was the general practice.

Plaintiffs seek to avoid the testimony of these witnesses on the further ground that it is incompetent, irrelevant, and immaterial, the point plaintiffs attempt to make having to do with the first paragraph of the above quotation from the petition to set aside the default. That is, plaintiffs urge that the evidence introduced was with respect to the practice *of attorneys in the Mahaska district court,* whereas the petition makes reference to the practice *of the Mahaska district court.* In view of the context and subject matter of the petition, plaintiffs' contention appears to be hypercritical. In the paragraph preceding that one in which the words "practice of this court" appear there is a recital that without any notice to counsel for defendants the plaintiffs had the final order signed by the court. The gravamen of the petition is that it was plaintiffs' counsel who unwarrantedly and in violation of the general practice created an unavoidable casualty or misfortune preventing defendant-appellants from defending. No complaint in the petition is directed toward the court. We are of the opinion that the expression "practice of this court" fairly included more than acts of the presiding judge, and meant the practices characteristic of the proceedings in this court when attorneys appear for litigants therein. It is also doubtful whether the point plaintiffs now urge as to this evidence was obvious to any such degree that the objection, general in character, made by plaintiffs on the trial, was a sufficient one. We are of the opinion that the testimony of the lawyer-witnesses was properly before the court.

1126

■ Plaintiffs further urge that the existence of a general custom or practice, even if established, "being repugnant to the statutory law is absolutely null and void." The repugnancy, say plaintiffs, is to section 11587, Code 1935, which provides that if a party fails to file or amend his pleading by the time prescribed by the rules of pleading, "judgment by default may be rendered against him, on demand of the adverse party, made before such pleading is filed." Plaintiffs say a custom cannot annul this statute. But there is another statute that may not be ignored. While section 11587 does provide that judgments by default may be entered, it is likewise true that section 12787, Code 1935, provides a procedure by which judgments, after being so entered, may be vacated. If facts, or showings of facts, by reason of which section 12787 affords relief, are "absolutely null and void" because repugnant to section 11587, it must be because, and amounts to saying that, the repugnancy is between the two statutes, that is between section 11587 and the statute that authorizes the making of such showing, i. e., section 12787. For according to the theory of plaintiffs any fact showing made by authority of section 12787 would be repugnant to section 11587, and section 12787· would become meaningless. We cannot agree with plaintiffs' contention, and are of the opinion that the general practice of attorneys in the Mahaska district court as shown by the testimony may be taken into consideration in determining the question before us. Chandler Milling & Mfg. Co. v. Sinaiko, 201 Iowa 791, 208 N. W. 323; Newlove v. Stern, 196 Iowa 1111, 196 N. W. 51; Hatt v. McCurdy, 223 Iowa 974, 274 N. W. 72.

■ Another contention of plaintiffs pertains to Code section 12787, supra. Plaintiffs say that defendant-appellants could have procured an order staying proceedings pending the appeal; that then the casualty or misfortune of which defendant-appellants complain would not have overtaken them; therefore, say plaintiffs, the casualty or misfortune was not unavoidable within the terms of this statute. With respect to this contention there is not before us a situation where the words "unavoidable casualty" used contractually might have been intended by the parties to comprehend only acts of God or other events which human prudence, foresight and sagacity could not prevent. In the instant case, these words appearing in a statute, the intention of

the legislature expressed in the words is the ultimate thing to be ascertained.

In interpreting section 12787 this court has looked upon this statute as being not inconsistent with certain basic concepts respecting adequate administering of the law, particularly the fundamental rule that each case should be tried on its merits, or as in some cases expressed, every party to an action should have his day in court. While this fundamental rule is promotive of the truth and justice prevailing between litigants, another consideration of high importance is obvious, that is, the rule also well serves public policy in preserving respect for and confidence in our laws and in the manner of their administration.

So viewing this statute, this court has at no time counter-nanced the strict construction of the word "unavoidable" urged by plaintiffs. To do so now would necessitate overruling a multi-tude of our prior holdings. In Hatt v. McCurdy, 223 Iowa 974, 274 N. W. 72, is a review of many of these previous decisions, and the opinion makes evident what we deem to be the legislative intent as expressed in section 12787. The rulings in that case, and in the authorities therein cited, are, in our opinion sufficient, without requiring restatement here, for holding in the instant case that there was a showing of unavoidable casualty or mis-fortune, that prevented defendant-appellants from defending, which warranted and required the vacating of the default judg-ment, and the granting of a new trial, and we do so hold.

The defendant-appellants employed two reputable at-torneys, Keating and Bannister. They relied on these attorneys as of right they might do. Nothing in the record points to any negligence or supineness upon the part of these defend-ant-appellants. No blame attached to them. We find nothing substantial in plaintiffs' contention to the contrary, i. e., that defendant-appellants, or at least one of them, Cole R. Van Gor-den, were or was negligent, plaintiffs' reliance being on the fact that the name of Cole R. Van Gorden appears on some of the pleadings as of counsel for defendant-appellants. The evidence is that the name of Cole R. Van Gorden was inserted among at-torneys for defendant-appellants at the instance of the two at-torneys who were actually employed, and merely as a compli-ment or courtesy. The occasion for so doing was that in 1936 Cole R. Van Gorden had been admitted to practice law. But that he was not practicing law is equally clear. His business was

jobbing in Des Moines, in association with his father, in pursuance of which business he was continually traveling. This occasionally brought him into the county seat of Mahaska county. On some of these trips he was in the office of the clerk of that court and looked over the files in this case. But we conclude from the record that he neither had nor assumed any authority or responsibility for any matters connected with the case, that the appearance of his name as of counsel was no more than a gesture, and that he as well as the other defendant-appellants relied and depended entirely upon attorneys Keating and Bannister. Cole R. Van Gorden determined nothing with respect to the case nor did he assume so to do. The facts do not justify saying that, if there was any want of care in not procuring a stay order or in not pleading to the substituted petition, it was Cole R. Van Gorden's. As between the attorneys Keating and Bannister the arrangement was that if Keating, the only attorney who was resident in Mahaska county, was informed that plaintiffs desired to carry on proceedings in the district court, he, Keating, would inform Bannister, residing in Des Moines, to the end that the latter would apply to the supreme court for a stay order. The expedition with which the appeal was being carried on, the notice served in March and the submission had in September following, prior to the October term of the Mahaska district court, added something of probability that the procuring of a stay order was something superfluous. But nevertheless as above stated it was arranged that application would be made upon plaintiffs indicating their intention to proceed in the trial court. Keating believed he would be informed of any such intention on part of plaintiffs' counsel, and was without warning that the general custom shown in the evidence was to be abrogated. In the April term the Mahaska court was engaged in trial of cases until about the middle of June. During that period counsel for plaintiffs in no way indicated a desire to proceed with the case. Nor had they indicated to anyone any such intent by the filing of a trial notice for the April term, although one defendant, a mortgagee of the premises, had filed its answer. No trial notice was filed. After the middle of June a judge returned to the county seat occasionally, usually on Saturday, and there were some contested matters tried by agreement of the parties. During that period counsel for plaintiffs in no way indicated any desire to proceed with the case. Waiting until September

·24 they procured the signing of the default decree and for some reason it remained out of the clerk's office until September 25, the day on which the term was adjourned sine die. Five days later on September 30 the same counsel for plaintiffs in this court argued the merits of the appeal, though they knew a decree purporting to finally adjudicate the controversy, had been entered. If Keating was at fault in relying upon the general custom and practice of attorneys in Mahaska district court, long observed between himself and the McCoys, it was in failing to anticipate that without warning his confidence would be nullified by those in whom it had been reposed, and who must have known it had been a confidence of full measure and of long standing. Upon the whole record it would be a sorry commentary upon the ethics of an honorable profession to hold that a duty rested upon Keating to anticipate a happening of such character. However that may be, there was no negligence or fault on part of the litigants themselves, that is, the defendant-appellants. The case is reversed with instructions that, by the district court, the petition of defendant-appellants be allowed, the decree be set aside, and the case be reinstated, and a new trial be granted, and defendant-appellants be given due and sufficient time to plead to the substituted petition, and that thereafter the case proceed as may be proper and lawful.—Reversed and remanded with instructions.

SAGER, C. J., and DONEGAN, MICHELL, STIGER, and MILLER, JJ., concur.

HAMILTON, J., takes no part.