FIRST NATIONAL BANK OF NEWTON, Appellee, v. FEDERAL RESERVE BANK OF CHICAGO, Appellant.

No. 40307.

JUNE 23, 1930.

522

*Mayer, Meyer, Austrian & Platt* and *Strock, Sloan & Herrick,* for appellant.

*Korf & Korf,* for appellee.

GRIMM, J.—In October, 1928, the plaintiff filed its petition at law in the district court of Jasper County, Iowa, against the defendant, Federal Reserve Bank of Chicago, seeking to recover from the defendant the sum of $3,400. Briefly stated, plaintiff's cause of action, as disclosed by the petition, was that plaintiff received for collection from the treasurer of Jasper County, Iowa, a certain order or warrant drawn to plaintiff's order by said treasurer on the Newburg Savings Bank of Newburg, Iowa, in the sum of $3,400; that plaintiff sent said warrant to the defendant, Federal Reserve Bank, for clearance, and with instructions to collect same; that defendant sent said warrant to its correspondent, Merchants National Bank of Grinnell, Iowa, for collection, and the last named bank collected said warrant from the Newburg bank, but the proceeds thereof were retained and converted by said Grinnell bank, which closed its doors; and it is charged that the proceeds were retained by the defendant, Federal Reserve Bank. The petition further alleges that defendant was negligent in selecting the Grinnell bank as a collection agent, improperly instructed said collection agent, applied the collection proceeds on said agent's overdraft and indebtedness, and thereby converted the proceeds of said warrant.

In December, 1928, the defendant filed its sworn answer, in six divisions. The answer contained a virtual general denial. It also pleaded the pertinent provisions of the Federal Reserve Act, the Federal Reserve Board Regulations, and the Seventh Federal Reserve District Regulations, alleging a complete defense, and defendant's non-liability for its agent's acceptance of drafts or failure to remit collection proceeds. The answer further set out that plaintiff had elected to pursue another remedy, and had sued the defunct Merchants National Bank of Grinnell and the receiver thereof on the same cause of action involved here, and that only after being defeated thereon in the United States District Court for the Southern District of Iowa did plaintiff commence this suit. This answer showed as at-

torneys for the defendant, Charles L. Powell, of Chicago, Illinois, and G. C. Rinehart, of Des Moines, Iowa.

On December 24, 1928, defendant's counsel, Mr. Powell, wrote plaintiff's attorney, stating that he (Powell) planned a vacation trip, and would like assurance that nothing would be done in this case until his (Powell's) return. He stated that Mr. Rinehart was leaving the Federal Reserve Bank the first of the year (January, 1929), and if it were necessary to have local counsel, he (Powell) would appreciate it if plaintiff's attorney would write him to that effect. Mr. Powell also said that, on returning from his vacation, he would be prepared to go on with this suit, at the convenience of plaintiff's attorney. On December 28, 1928, plaintiff's attorney wrote Mr. Powell at Chicago, saying, among other things:

"We will stand by our agreement that nothing is to be done in this matter until your return from your trip. As soon as you return, won't you write us, and we will then arrange a time mutually satisfactory to both parties for trial."

On February 20, 1929, Powell wrote plaintiff's attorney at Newton the following:

"This is to advise you that I have returned to my office from my vacation, and I am now in position to take up with you the above case at such time as you may desire to put it on for hearing."

On February 22d, plaintiff's attorney wrote Powell as follows:

"I acknowledge receipt of yours of February 20th. The Court is at present engaged in the trial of civil jury cases and following which it is expected that the criminal cases will be tried. If there is time enough following that to get the case into this term's assignment, we will do so and advise you promptly. It may, however, have to go over until April."

On February 23d, Powell wrote plaintiff's attorney as follows:

"I have your letter of the 22nd inst. in the above matter, and I will appreciate it greatly if you will give me as much

notice in advance as possible of when this case is to be set down for hearing. I shall be very glad to have it go over to the April term, as having been away from the office for a month, it is a little difficult for me to give it attention now.''

Plaintiff's attorney sent no further communications to either Mr. Powell or to the Federal Reserve Bank, or to anyone representing them. On March 15, 1929, Mr. Powell dropped dead in Chicago. He was buried at Panora, Iowa, where he was born and reared. He had practiced law in Des Moines for a number of years prior to his going to Chicago. He was well known to the Iowa bar, and the news of his death received much more than usual publicity in all the leading papers in the state of Iowa.

Eleven days prior to the first day of the April term, March 30, 1929, plaintiff's attorney filed a trial notice in the district court of Jasper County in this and other cases. On April 10, 1929, at a regular assignment of causes, the case was assigned for trial for May 1, 1929. On April 30, 1929, plaintiff filed a reply, denying each and every allegation contained in defendant's answer. The cause was not reached for trial until Monday, May 6, 1929, at 2 o'clock in the afternoon. Neither the defendant nor any attorney representing it had received any communication of any sort, verbal or otherwise, from plaintiff's counsel or from any other source, that this cause was to be assigned for trial without any notice to the defendant or its counsel from plaintiff's attorney. As a consequence, no one appeared in court on May 6th. Plaintiff's attorney appeared, waived a jury, and submitted the case. He had an ex-parte hearing, and had an entry made for judgment for the full amount. He prepared an enrolled judgment entry, which was signed and filed on May 6, 1929.

It clearly appears from the record that Charles L. Powell was a member of the firm of Mayer, Meyer, Austrian & Platt, attorneys in Chicago, with offices in the Continental & Commercial National Bank Building. The business of the Federal Reserve Bank, the defendant, was, however, handled entirely by Mr. Powell. After Mr. Powell's death, the business of the Federal Reserve Bank passed to the said firm of Mayer, Meyer, Austrian & Platt.

On June 19, 1929, Mayer, Meyer, Austrian & Platt telegraphed plaintiff's attorney at Newton, saying:

"Our Mr. Powell died suddenly March fifteenth stop Please wire our expense present status of suit First National Bank of Newton versus Federal Reserve Bank of Chicago stop Our files show nothing since your letter to Powell of February twenty-second."

On June 25th, plaintiff's attorney wrote Mayer, Meyer, Austrian & Platt a letter, containing the following:

"This cause was noticed for trial by the plaintiff for the April term. The court made assignment for the term the second day thereof, and said cause was assigned for trial Wednesday, May 1st, 1929, at 9 A.M. It was not reached for trial until May 6th, when it was called in its regular order and tried, judgment being entered for the plaintiff in the sum of $4,133.83 and costs."

The defendant, through its attorneys, immediately made an investigation; and on July 9th, it still being the same April, 1929, term of the district court of Jasper County, Iowa, in which the judgment of May 6, 1929, was rendered against the defendant, the defendant filed its sworn application to vacate the judgment, asking for a trial on the merits. This application contained a complete recital of the facts and circumstances in the case up to that time. Attached to the application were copies of all correspondence passing between plaintiff's attorney and Powell. It definitely stated that Powell's former address was that of Mayer, Meyer, Austrian & Platt, defendant's attorneys in Chicago; that plaintiff's attorney had never given any notice directed to Powell in reference to the assignment of the cause for trial; and that, if he had sent any such notice, the same would have been received by Mayer, Meyer, Austrian & Platt, into whose hands, immediately upon the death of Powell, the whole business of the Federal Reserve Bank passed. The application stated that any notice which might have been sent to Powell would have received prompt attention by Mayer, Meyer, Austrian & Platt.

The application, among other things, stated that Mayer, Meyer, Austrian & Platt relied fully upon the agreement and understanding which existed between plaintiff's attorney and

Powell, attorney for defendant, relative to a trial of this cause, and that the entering of judgment against the defendant was in violation of the agreement and the good-faith understanding which existed between the attorneys in this cause, and was without any warning or notice to this defendant or its attorneys, who had no knowledge whatever thereof, and who were relying at all times fully upon the agreement and understanding which existed between plaintiff's attorney and Powell; that the taking of said judgment was in violation of the reasonable and good-faith understanding which existed between both parties to this cause and their attorneys, and came in the nature of a surprise to this defendant and its attorneys, who were at all times in the exercise of diligence, and who in good faith planned a meritorious defense upon the case as pleaded. Attached to this application was a copy of the answer, and an allegation that said answer contains a meritorious defense to all the allegations in plaintiff's petition.

On July 15, 1929, the plaintiff filed a sworn resistance to defendant's application to vacate judgment. It was verified by plaintiff's attorney. It admitted the correspondence between plaintiff's attorney and Powell, as hereinbefore set forth; but plaintiff's attorney claimed that in said correspondence the only agreement for a trial at a date mutually satisfactory to counsel had reference to a single term of court, to wit, the February, 1929, term, and that defendant and its counsel had no right to rely upon plaintiff's attorney or said correspondence beyond that single term of court, and that they were negligent in so doing. The resistance further denied that defendant had a meritorious defense to the action.

On July 16, 1929, the defendant, with leave of court, filed a short amendment to its application. On July 16, 1929, plaintiff moved to strike the amendment as incompetent, irrelevant, and immaterial, and as conclusions of fact and law. On the same day, the cause was heard. The plaintiff relied upon its documentary case, except that it called one Welsh, an associate of Mayer, Meyer, Austrian & Platt. The examination developed nothing new. The defendant relied upon its sworn documentary evidence. The court overruled plaintiff's motion to strike defendant's amendment and overruled defendant's application as amended.

I. The controversy before us in this case is much simplified by the fact that the agreement between the attorneys is all in writing, and admitted. The proceedings are under Chapter 552 of the Code of 1927, and are entitled "Procedure to Vacate or Modify Judgment." The only question is whether the trial court erred in refusing to vacate the judgment. The defendant had fully answered, alleging a complete defense to the action. The sworn application to set aside the judgment contained an allegation that the defendant had a complete defense to the action. Furthermore, it appears from the record that the plaintiff sought recovery on the cause of action in suit here, notwithstanding the fact that plaintiff had been defeated in a prior and wholly inconsistent cause of action against other parties. This court said, in *Brock v. Ellsworth State Sav. Bank,* 192 Iowa 1042:

"* * * it is not contemplated that the merits of the defense or the case shall be tried out on the application to vacate the judgment. A prima-facie showing is all that is required."

See, also, *Johnson, Lane &.Co. v. Nash-Wright Co.,* 121 Iowa 173, in which this court said:

"It is true that the court does not finally determine the merits of the defense, but the party asking the privilege of being allowed to interpose it after the rendition of judgment against him should at least go so far as to make a prima-facie defense as against the claim on which the judgment was founded."

On the whole record here, there was such a prima-facie showing.

II. It is the policy of the law that every cause of action should be tried upon its merits,—that every party to an action shall have his day in court. Manifestly, therefore, appellate courts are more inclined to reverse for a failure to set aside a judgment taken by default or on ex-parte hearing than where such judgment has been set aside and a trial on the merits granted. Moreover, as was said by this court in *Barto v. Sioux City Elec. Co.,* 119 Iowa 179:

"* * * it has ever been the purpose of the courts to relieve from accident, mistake, and misfortune not brought about

through neglect or inactivity. * * * Courts should and do favor the trial of causes upon their merits, and, if failure to secure such trial is not due to the supinity or inattention of the party in default, he should, upon a proper showing of merits, be given an opportunity to be heard."

See, also, *Norman v. Iowa Cent. R. Co.,* 149 Iowa 246, and cases cited; also, *Rounds v. Butler,* 208 Iowa 1391.

III. The policy of the law in this state, as it applies to cases of this kind, finds expression in the following cases:

In *Council Bluffs L. & Tr. Co. v. Jennings,* 81 Iowa 470, in which case verbal agreements for continuance had caused the case to be passed for several terms, these agreements were subsequently put in affidavit form, in which affidavits certain admissions were made. This court said:

"It is clear from the statements of Hunter [one of defendant's attorneys] that an agreement not to call the case for trial during the congressional term of Major Lyman without personal notice was made. It is fair to conclude from admitted facts that the numerous continuances of the cause were for the benefit of the attorneys for plaintiff. Conceding that the agreement was not in fact to extend beyond the fourth day of March, 1889, *yet it is apparent that Traver* [one of the attorneys for the defendant] *may easily and naturally have fallen into the error of believing that the case would not be called until personal notice of the intention to call it had been given him.*"

*Reilley v. Kinkead,* 181 Iowa 615, was a case in which an attorney kept in his office, at the approach of a term of court, two baskets, in one of which he kept papers in cases in which he appeared for the plaintiff, and in the other, papers pertaining to cases in which he appeared for the defendant. By mistake, the papers in the *Reilley* case were put in the basket containing cases in which the attorney appeared for the plaintiff. A judgment was entered by default. A motion was made to set it aside, and there was a resistance. The lower court refused to set the default aside. In reviewing the case, this court said, among other things:

"Upon the showing made, it cannot be doubted that defendant and his counsel intended in good faith to appear and

make defense to this action. So far as the defendant personally is concerned, we think he can be charged with no fault or neglect in depending upon his counsel, whom he had employed for that purpose, to take such action in court as was necessary to protect his interests. * * * The courts are not disposed to be overtechnical in denying hearing to a party who, in good faith, and without negligence, desires and intends to try his case upon its merits. It has been said by us that 'a trial on the merits should be had in all cases where it is possible, and particularly where there is failure to show negligence on the part of the party in default.' *Logan v. Southall,* 137 Iowa 372, 374. It has also been held that the mistake of the attorney, even though it relates to a matter of which he is required by law to take notice, may afford good ground for excusing a default. *Jean v. Hennessy,* 74 Iowa 348. * * * It has often been said by this and other courts that courts should be disposed to give a party a trial on the merits of his case if application to set aside the default be promptly made and the party is not clearly shown to have been negligent. *McQuade v. Chicago, R. I. & P. R. Co.,* 78 Iowa 688.''

In *Clarke v. Smith,* 195 Iowa 1299, in which an attorney failed to defend an action, this court said:

''Clearly it is a case of mistake or misfortune, due to the limitations of the human mind. *Jean v. Hennessy,* 74 Iowa 348; *Barto v. Sioux City Elec. Co.,* 119 Iowa 179. Attorneys are mere men, charged by the law to be diligent; but misunderstandings and mistakes do and will undoubtedly arise, for which their client should not be held responsible. *County of Buena Vista v. I. F. & S. C. R. Co.,* 49 Iowa 657. * * * Not every act of inadvertence on the part of an attorney is negligence imputable to the client. *McMillan v. Osterson,* 191 Iowa 983.''

In *Rounds v. Butler,* 208 Iowa 1391, in a case in which the issues were made up and an ex-parte hearing was had in the absence of defendant's attorneys, this court said:

''It is quite apparent that defendant's counsel was laboring under a misapprehension. The case is not one of default for non-appearance or want of answer. * * * The law favors determination of cases on their merits, and looks with disfavor on

advantage taken of what manifestly must have been a misunderstanding of counsel.''

With the foregoing expressions of this court in mind, we think an examination of the correspondence hereinbefore set forth shows a state of facts upon which the trial court should have sustained defendant's application to set the judgment aside. The only fair inference to be drawn from said correspondence is that the case was to be tried on its merits, at a time mutually satisfactory to both parties. Powell had the right to assume that he would be advised promptly when the cause was assigned for trial. He had reason to believe that the case would go over to the April term. The position taken by appellee's counsel, that the agreement to have the case tried at a time mutually agreeable to both parties and to promptly advise Powell, the defendant's attorney, when the case would be set for trial, applied only to the February term of court, is, we think, supertechnical, and not warranted by the record. At all events, Powell was warranted in assuming otherwise.

As was said in the case of *Council Bluffs L. & Tr. Co. v. Jennings*, 81 Iowa 470, Powell might ''easily and naturally have fallen into the error of believing that the case would not be called until personal notice of the intention to call it had been given him.'' It is very apparent from the record that Powell fully intended to interpose what he believed to be a complete defense to appellee's cause of action. If plaintiff's attorney, at the time he wrote the letters concerning a time for trial agreeable to both parties, and concerning prompt advice to Powell of the time set for trial, intended all this to apply only to the February term, it is quite apparent that Powell was misled thereby, and it is equally apparent that Powell's unexpected death contributed to the unfortunate consequences which followed. It also quite clearly appears from the record that, if plaintiff's attorney had promptly advised Powell, or the defendant, of the date for which the case was set for trial, such notice would have reached Mayer, Meyer, Austrian & Platt, and the cause would have had prompt attention, all notwithstanding Powell's previous death.

We deem further comment unnecessary, and hold that on defendant's appeal the cause is reversed, and on plaintiff's ap-

peal the cause is affirmed.—*Reversed on defendant's appeal; affirmed on plaintiff's appeal.*

MORLING, C. J., and EVANS, STEVENS, FAVILLE, DE GRAFF, ALBERT, and KINDIG, JJ., concur.