Nolan KREFT, Appellee,

v.

FISHER AVIATION, INC. and Robert
Fisher, Defendants,

Piper Aircraft Corporation,
Defendant-Appellant.

Fred WILLIAMS, Appellee,

v.

FISHER AVIATION, INC. and Robert
Fisher, Defendants,

Piper Aircraft Corporation,
Defendant-Appellant.

Nos. 59473 and 59474.

Supreme Court of Iowa.

March 22, 1978.

298

Ahlers, Cooney, Dorweiler, Haynie & Smith and L. W. Rosebrook, Des Moines, for defendant-appellant Piper Aircraft Corp.

McCullough Law Firm, P. C., Sac City, for appellees.

Considered by MOORE, C. J., and MASON, RAWLINGS, REES and UHLENHOPP, JJ.

REES, Justice.

This matter involves appeals in two separate but identical actions for damages for injuries sustained when the plaintiffs, Kreft and Williams, sustained injuries in the crash of an aircraft leased from the defendants Fisher Aviation, Inc. and Robert Fisher, and manufactured by the defendant Piper Aircraft Corporation. The cases were consolidated for the purposes of this appeal. Defendants Fisher Aviation, Inc. and Robert Fisher are not parties to the appeal, and defendant Piper Aircraft Corporation appeals from an order denying its applications and petitions to set aside and vacate default judgments against it, contending the district court clerk and the attorneys for the plaintiffs failed to send and furnish to them copies of orders, judgments and other documents filed in the case which Piper contends is a practice required by the Rules of Civil Procedure, and that such conduct deprived Piper of an opportunity to defend. We affirm the action of the trial court.

On May 26, 1974 the plaintiffs Kreft and Williams were injured in an accident when the plane Williams had leased from defendants Fisher and Fisher Aviation, Inc., crashed during a landing at the Sac City Airport. Plaintiff Williams was the pilot and Kreft was a passenger in the plane at the time of the accident.

The petitions of the plaintiffs in separate actions were filed on May 6, 1975. Personal service of original notices was had upon the defendants Fisher and Fisher Aviation on May 7, 1975 in Carroll County. On that same date, plaintiffs' attorney filed original notices directed to Piper Aircraft Corporation, a foreign corporation, with the secretary of state of the state of Iowa. On May 9, 1975 plaintiffs' attorney mailed to Piper Aircraft Corporation in Lock Haven, Pennsylvania, by certified mail, copies of the original notices and notices of filing with the secretary of state. Said notices were receipted for by one Yarnell, an employee of Piper, on May 13, 1975, and were on that date transmitted through the Finance Department of Piper to its Products Claim and Litigation Department for attention.

The notices were received in the Products Claim and Litigation Department of Piper by a clerical employee who filed the notices in an inactive accident investigation file and failed to bring them to the attention of anyone in authority at Piper. The documents remained unnoticed until December 12, 1975.

The defendants Fisher and Fisher Aviation entered their appearances on May 23, 1975; and on May 30 and June 27, 1975, stipulations between the plaintiffs and the other appearing defendants were filed affording said defendants additional time within which to respond to the plaintiffs' petitions. The answers of Fisher and Fisher Aviation were filed in both cases on July 18, 1975.

On July 14, 1975, there having been no appearance for Piper, the district court entered orders declaring Piper to be in default, after applications for default were made by plaintiffs' attorney. On September 22, 1975, after hearing on damages, the district court rendered judgments against Piper for $60,000 in the Nolan Kreft case and for $75,000 in the Fred Williams case, together with costs in each action. Plaintiffs' attorney directed a letter to Piper which was received by Piper on December 12, 1975, in which inquiry was made as to how Piper intended to satisfy the plaintiffs' judgments. Piper asserts it had received no communications of any kind of the progress of the Kreft and Williams cases other than

the notices which were received in May and placed in the inactive file by the office personnel. No papers filed with respect to the continuances granted Fisher and Fisher Aviation, and no copies of orders or judgments in connection with the default proceedings or the entry of judgments had been forwarded to Piper.

On December 30, 1975 Piper filed its petitions and applications to set aside and vacate the default judgments. The applications were overruled in each case, from which rulings Piper appeals.

Defendant Piper Aviation Corporation raises the following issues for review:

(1) Was Piper denied equal protection of the law when it was not given notice of the default judgments while other parties in allegedly similar situations are given such notice under rule 233, Rules of Civil Procedure, or are protected from the entry of personal judgments under rule 234, R.C.P., for parties served by published notice under rule 60.1, R.C.P.?

(2) Did the trial court err in refusing relief to Piper under rule 236, R.C.P., by concluding that Piper's failure to receive notice of the default judgment did not toll the sixty-day period for setting aside default judgments under rule 236?

(3) Was Piper entitled to receive copies of the documents which were filed in the suits by parties other than Piper before Piper's default under rule 82, R.C.P.?

(4) Should the failure to include the individual names of plaintiffs in the notifications of filing to Piper render such notifications fatally defective under § 617.3, The Code, depriving the trial court of jurisdiction?

(5) Did the trial court abuse its discretion in its failure to grant relief to Piper from the default judgments under rules 236 and 252, R.C.P.?

I. The central question presented by Piper's constitutional argument in the first issue raised for review involves rules 56.1, 60.1, 233 and 234, R.C.P. Said rules provide:

"56.1 Personal service. Original notices are 'served' by delivering a copy to the proper person. Personal service may be made as follows:

"(a) Upon any individual aged eighteen years or more who has not been adjudged incompetent, either by taking his signed, dated acknowledgment of service endorsed on the notice; or by serving him personally; or by serving, at his dwelling house or usual place of abode, any person residing therein who is at least eighteen years old, but if such place is a rooming house, hotel, club or apartment building, the copy shall there be delivered to such a person who is either a member of his family or the manager, clerk, proprietor or custodian of such place."

"60.1. Known defendants.

"(a) In every case where service of original notice is made upon a known defendant by publication, copy of the notice shall also be sent by ordinary mail addressed to such defendant at his last known mailing address, unless an affidavit of a party or his attorney is filed stating that no mailing address is known and that diligent inquiry has been made to ascertain it.

"(b) Such copy of notice shall be mailed by the party, his agent or attorney not less than twenty days before the date set for appearance.

"(c) Proof of such mailing shall be by affidavit, and such affidavit or the affidavit referred to in rule 60.1 'a' shall be filed before the entry of judgment or decree. The court, in its judgment or decree, or prior thereto, shall make a finding that the address to which such copy was directed is the last known mailing address, or that no such address is known, after diligent inquiry."

"233. Notice—notice of default in certain cases. When any judgment other than one in rem has been taken by default against a party served with notice delivered to another person as provided in rule 56.1 'a', the clerk shall immediately give written notice thereof, by ordinary mail to such party at his last known address, or the address where such ser-

vice was had. The clerk shall make a record of such mailing. Failure to give such notice shall not invalidate the judgment."

"234. On published service. No personal judgment shall be entered against a person served only by publication or by publication and mailing, as provided in rule 60.1, unless he has appeared."

Succinctly stated, the first issue presented for review is whether Piper was denied equal protection of the law when no notices of the default judgments were sent to Piper while under rule 233 parties served with notice by delivery to another person under rule 56.1(a), R.C.P., are entitled to notice of default, and under rule 234 no personal judgment can be entered against a defendant who has not appeared and who has been served by publication or by publication and mailing under rule 60.1. Piper contends it is situated similarly to a party served under the above rules since a corporation is served with notice only through its agents or employees. Piper insists that since it is situated similarly to parties served under rule 60.1, or served by delivery to another person under rule 56.1(a), the failure to send notices of the default judgments to it was a denial of equal protection of the laws under the 14th amendment of the United States Constitution.

Rules 233 and 234 indirectly establish a classification of persons who do not receive notice directly and are given another opportunity to be apprised of the proceedings by a notice of default judgment or are protected from the entry of personal judgments against them while persons receiving notice directly are not entitled to receive notices of default since they have been put on notice of the pendency of the proceedings.

■ In order to determine whether a classification is a denial of equal protection we must determine the classification is rationally related to a legitimate state interest and is not patently arbitrary. *Lunday v. Vogelmann*, 213 N.W.2d 904, 907 (Iowa 1973). The underlying purpose involved in rules 233 and 234 is to insure notices to persons who do not receive some form of

notice by direct service. Such purpose is a legitimate state interest and the classification which is provided for by the rules is rationally related to that purpose. Further, we incline to the view the classification is not patently arbitrary since Piper had received direct notice of the proceedings against it, albeit the notice escaped the attention of persons in authority.

■ The classification established in rules 233 and 234 which permitted default judgments to be entered against Piper without notice does not deny Piper's right to equal protection under amendment 14 of the United States Constitution. We, therefore, hold Piper was not entitled to notices of the default judgments which were entered against it.

■ II. The second issue raised for review which Piper contends entitles it to a reversal is whether the trial court erred in concluding that relief from the default judgments was not available under rule 236, R.C.P., since no motion to set aside default was filed within sixty days after the entry of the default judgments as required by the rule, and the running of this period was not tolled by the lack of notice of the default judgments to Piper. Piper's argument to the contrary ignores the plain language of rule 236, which states:

"236. Setting aside default. On motion and for good cause shown, and upon such terms as the court prescribes, but not ex parte, the court may set aside a default or the judgment thereon, for mistake, inadvertence, surprise, excusable neglect or unavoidable casualty. Such motion must be filed promptly after the discovery of the grounds thereof, but not more than sixty days after entry of the judgment. Its filing shall not affect the finality of the judgment or impair its operation."

■ The above rule provides that a motion filed thereunder must be filed within sixty days after the *entry* of the default judgment and not after notice of the default judgment has been received by the defendant. Piper's argument is postulated

on the presumption it was entitled to receive notice under rule 233 under its right to equal protection. However, as we have concluded in division I hereof, Piper was not entitled to such notice. We are, therefore, constrained to the view, and hold, the trial court did not err in refusing to apply rule 236 and to set aside the judgment and default since the sixty-day period for making motion to set aside the default was long past. The sixty-day period was not tolled by the failure of Piper to give proper attention to the notice which it admittedly received and the rule last above stated affords Piper no solace or comfort.

III. Piper further contends it was entitled to receive copies of papers and documents filed by the other parties in the suits under rule 82(a), R.C.P., before it was declared to be in default.

Plaintiffs in the two cases, and the defendants Fisher and Fisher Aviation entered into two stipulations for the extension of time to file pleadings responsive to the petitions of the plaintiffs, and the other defendants filed appearances after the commencement of the suit but before Piper was declared to be in default. Copies of such stipulations were not furnished Piper who asserts it was entitled to have furnished to it copies of such filings under the provisions of rule 82(a), which provides:

"Service and filing of pleadings and other papers.

"(a) *When service required.* Everything required by these rules to be filed, every order required by its terms to be served, every pleading subsequent to the original petition unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment, and similar paper shall be served upon each of the parties. No service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against

them shall be served upon them in the manner provided for service of original notice in rule 56.1. * * * "

We are unable to perceive how and in what manner Piper could have been prejudiced by the failure of plaintiffs or the clerk of the court to furnish it with copies of the papers, stipulations and proceedings filed by the other parties defendant to the two suits. Piper makes the argument that had it been furnished with copies of such filings, the receipt of the same by it would have put it on actual notice of the suits. The notices which were admittedly sent to Piper and misplaced by its employee had this function and Piper cannot escape responsibility for its failure to act in response to the original notices of the actions sent to it because of a claimed noncompliance with rule 82(a), the purpose of which is to insure that the parties are aware of everything that is transpiring in a pending action. We are unable to perceive merit in Piper's contention in this regard.

IV. The next issue stated for review is whether the trial court erred in failing to hold that the captions on the notifications of filing required by § 617.3, The Code, 1975, did not bear the names of the plaintiffs and were, therefore, not in substantial compliance with the requirements of the statute. The relevant portion of § 617.3 of the Code provides:

"The notification of filing shall be in substantially the following form, to wit:

"To .............. (Here insert the name of each defendant with proper address.) You will take notice that an original notice of suit or process against you, a copy of which is hereto attached, was duly served upon you at Des Moines, Iowa by filing a copy of said notice or process on the ...... day of .........., 19... with the secretary of state of the state of Iowa.

"Dated at .........., Iowa this ...... day of .........., 19....

.......................
Plaintiff
By
.......................
Attorney for Plaintiff"

There is no dispute between the parties but that Piper received notifications of the filing of the original notices with the secre-

tary of state of Iowa. It is also conceded the notifications of filing to comply with the foregoing statute did not bear the signatures or names of the plaintiffs on the lines provided for them and bore only the name of plaintiffs' counsel. Piper claimed such noncompliance made the notifications fatally defective, depriving the trial court of jurisdiction to enter the default judgments against it.

We have addressed this question heretofore and said there must be clear and complete compliance with the procedures provided for in § 617.3, The Code, in order for the court to secure jurisdiction over a nonresident under that statute. *Boyer v. Broadwater*, 168 N.W.2d 799, 801 (Iowa 1969) and citations. Section 617.3 requires there be substantial compliance with the form of notification of filing set out above. The plaintiffs' names in the two cases appeared in the captions on the notifications of filing so that had the notifications of filing come to the attention of the proper officers or employees of Piper they would have been fully apprised of the names of the plaintiffs.

We conclude the notifications were in substantial compliance with the provisions of § 617.3 since the names of the plaintiffs appeared in the caption on each notification and in the attached copies of the original notices filed with the secretary of state and in the copies of petitions as well. The identity of the plaintiffs was readily determinable therefrom and we are not persuaded there was a lack of substantial compliance with the notification requirements contained in § 617.3, The Code.

V. In its final issue stated for review Piper asserts the trial court abused its discretion in failing to afford it relief from the default judgments under rules 236 and 252, R.C.P. Essentially it is Piper's claim it was entitled to relief under the provisions of rule 236 since its defaults were occasioned by a mistake when the notifications sent to it were misplaced. We take the view, however, the trial court was correct in not affording Piper relief under rule 236 since the motions to set the default aside was not

filed within the sixty-day limitation period provided for in the rule.

Piper further claims the trial court abused its discretion in not granting it relief under rule 252 on the basis of the failure of the other parties to furnish copies of documents, papers and pleadings filed in the cases as is contemplated by rule 82(a), and that the failure of the clerk to send notices of default to Piper under rule 233, or to notify Piper of the entry of the judgments in accordance with rule 120, R.C.P., was prejudicial to Piper's rights.

Rule 252, R.C.P., provides:

"252. Judgment vacated or modified —grounds. Upon timely petition and notice under rule 253 the court may correct, vacate or modify a final judgment or order, or grant a new trial on any of the following grounds:

"(a) Mistake, neglect or omission of the clerk;

"(b) Irregularity or fraud practiced in obtaining the same;

"(c) Erroneous proceedings against a minor or person of unsound mind, when such errors or condition of mind do not appear in the record;

"(d) Death of a party before entry of the judgment or order, and its entry without substitution of his proper representative;

"(e) Unavoidable casualty or misfortune preventing the party from prosecuting or defending;

"(f) Material evidence, newly discovered, which could not with reasonable diligence have been discovered and produced at the trial, and was not discovered within the time for moving for new trial under rule 244."

A proceeding for the vacation of a judgment is not triable de novo on appeal. The trial court has considerable discretion in deciding whether to afford relief when a vacation of a judgment is sought, and we are more inclined to find abuse of discretion when relief from the judgment has not been granted than when it has been. *Windus v. Great Plains Gas Company*, 255 Iowa 587, 593, 122 N.W.2d 901, 905.

Piper contends trial court should have granted it relief under rule 252(a), R.C.P., since the failure of the clerk to forward to Piper notices of default under rule 233 constituted a "mistake", and that the clerk's failure to provide the other defendants notices of, or copies of, the entry of Piper's default and the judgments as required by rule 120 also constituted a "mistake" as envisioned by rule 252(a).

On the basis of our conclusion set out in division I hereof we incline to the view Piper was not entitled to notice under rule 233, so the lack of it does not provide a basis for relief to Piper under rule 252(a). Piper engages in conjecture and contends that if the notices of default and of the judgments had been afforded the other defendants to the suit, the other defendants would have notified Piper of the entries of default and the judgments, and that Piper could then have acted sooner to move to set the defaults aside. None of the foregoing contentions relieve Piper of the responsibility for acting upon the notifications of filing within the proper time limitation.

■ Piper further claims trial court should have granted it relief under rule 252(b) because the judgment was irregularly entered since the parties did not send copies of pleadings filed as required by rule 82(a), and insists that if it had been afforded such copies it would have been put on actual notice of the pendency of the actions and would have guarded against its default. We cannot accept this view since the only reason for the entry of the defaults and the subsequent judgments against Piper was Piper's failure to appear in the actions which was the result of its employee misplacing the notifications of filing. We must, therefore, hold trial court's failure to set aside the defaults on the foregoing ground did not constitute an abuse of discretion.

■ Although Piper presents an issue in regard to its request for relief under rule 236, there is also a peripheral question as to whether the trial court should have granted relief to Piper under rule 252(e), which permits a judgment to be vacated for "unavoidable casualty or misfortune preventing the party from prosecuting or defending". Piper claims the notifications of filing were misplaced by a clerical mistake and that Piper did not act for such reason. The trial court considered such lack of action constituted gross negligence and refused to grant relief to Piper.

In *Windus v. Great Plains Gas Company*, 255 Iowa at 595, 122 N.W.2d at 906, we said that while relief could be granted under rule 236 for some degrees of negligence, such latitude is not permitted under rule 252(e). See also *Lemke v. Lemke*, 206 N.W.2d 895, 897 (Iowa 1973); *Claeys v. Moldenschardt*, 260 Iowa 36, 43, 148 N.W.2d 479, 483. In this case it is obvious negligence on the part of an employee caused Piper's failure to appear in time to avoid the entry of the default orders and the subsequent judgments. We conclude such negligence which is imputed to Piper is not an "unavoidable casualty or misfortune" which would permit relief from the judgments under rule 252(e), and hold the trial court did not abuse its discretion in failing to afford Piper relief on the grounds asserted by Piper under rule 252.

■ In sum, we conclude Piper was not denied equal protection of the law because it failed to receive notices of the default under rule 233; that it was not entitled to relief under rule 236 as it failed to move within the sixty-day period provided for therein; that Piper is not entitled to relief on the basis of noncompliance with § 617.3, The Code, since the names of the plaintiffs appeared on the notifications which we deem complied substantially with the form prescribed by the statute. Finally, we conclude the trial court did not abuse its discretion in denying relief to Piper under rule 252 since the default judgments were the consequence of Piper's negligence for which it is responsible.

The order, judgment and decree of the trial court is, therefore, affirmed.

AFFIRMED.

All Justices concur, except UHLENHOPP, J., who concurs specially.

UHLENHOPP, Justice (concurring specially).

Did the trial court abuse its discretion in refusing to vacate the default judgments of $135,000 against defendant Piper Aircraft Corporation? Piper did not flout the process of the court. On the contrary, it desired to defend the suits.

The incident leading to this litigation occurred on May 26, 1974, as plaintiff Fred Williams attempted to land an airplane manufactured by Piper and rented from defendants Fisher Aviation, Inc. and Robert Fisher. The original petitions alleged that due to a malfunction of the throttle, the airplane crashed injuring Williams and his passenger, plaintiff Nolan Kreft.

Plaintiffs filed their respective petitions on May 6, 1975, in Sac County District Court. Fisher Aviation and Fisher were personally served in Carroll County the following day. Also on May 7, 1975, an original notice directed to Piper was filed with the Iowa Secretary of the State. On May 9, 1975, plaintiffs' attorney mailed copies of the original notices and notices of filing to Piper in Lock Haven, Pennsylvania. On May 13, 1975, the notices were received and signed for by Fred Yarnell, a clerk for Piper, and were transmitted to Piper's claim and litigation department for handling. An inexperienced clerical employee in the product claim and litigation department mistakenly filed the notices in an inactive accident investigation file without bringing them to the attention of anyone in authority.

Fisher Aviation and Fisher entered their appearances on May 23, 1975. Stipulations between plaintiffs and these defendants were filed on May 30 and June 27, 1975, giving these defendants additional time to answer. Piper was not served with copies of these stipulations. Fisher Aviation and Fisher answered on July 18, 1975.

Since Piper had not appeared, on July 14, 1975, the district court declared Piper in default. On September 22, 1975, after assessing damages, the district court entered default judgments against Piper for $75,000 plus court costs in the Williams case and for $60,000 plus court costs in the Kreft case. Copies of these judgments were not mailed to Piper.

On December 12, 1975, 81 days after the default judgments were entered—and 21 days too late for Piper to proceed under more flexible rule 236 of the Rules of Civil Procedure—Piper received a letter inquiring about satisfaction of the judgments. This was the first communication to Piper concerning the case after May 9, 1975, when it received the notices which were misfiled. Piper promptly retained counsel, who filed a petition to set aside the judgments.

I. Rule 252(e) compels me to concur with the court majority in denying relief. Piper's filing error was not "unavoidable" as that rule requires. *Windus v. Great Plains Gas Co.*, 255 Iowa 587, 595, 122 N.W.2d 901, 906; *Lemke v. Lemke*, 206 N.W.2d 895, 897–898 (Iowa); *Claeys v. Moldenschardt*, 260 Iowa 36, 43, 148 N.W.2d 479, 483. I concur reluctantly because of the unfairness of the result which our procedural rules necessitate, preventing Piper from defending on the merits because of a minor human error.

II. While I agree that rule 252(e) compels the result reached, I think it is not a good result. Procedural rules are not ends in themselves but are the means for achieving just results. In this case we are transferring $135,000 from one party to another because a file clerk put a paper in a wrong file, not because Piper built a bad airplane. The penalty we impose on Piper is out of proportion to the file clerk's faux pas which brings the penalty down on Piper; plaintiffs' lawsuit against Piper was no worse after the misfiling than before. A similar result could ensue to some plaintiff whose file clerk made a similar slip. The result we reach is inconsistent with our policy of trials on the merits, *Jacobsen v. Gamber*, 249 Iowa 99, 86 N.W.2d 147; *First National Bank v. Federal Reserve Bank*, 210 Iowa 521, 231 N.W. 453, and with the Federal Rules of Civil Procedure. We should consider a change in our rules at this point to coincide with the federal rules.

The federal counterpart of rule 252(e) is rule 60(b)(1), Federal Rules of Civil Procedure:

> *(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence, Fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect.

The liberal policy of the federal courts in applying rule 60(b) is stated in *Tolson v. Hodge*, 411 F.2d 123, 130 (4 Cir.):

> It has been held in an extensive line of decisions that Rules 55(c) and 60(b) are to be liberally construed in order to provide relief from the onerous consequences of defaults and default judgments . . ..
> Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits.

This liberal approach allows the federal courts to vacate default judgments and permit trials on the merits when strict enforcement of procedural rules is not in the interest of justice. *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242 (3 Cir.). See 11 Wright & Miller, Federal Practice & Procedure, § 2858 (1973).

Our rule 252(e) differs from the federal rule in present circumstances by requiring that the mistake leading to the default be "unavoidable." The federal requirement is that the mistake be "excusable." In contrast to our rule, the federal rule allowed vacation of a default judgment when the defendant's mistake was in not registering its new address with the secretary of the commonwealth. *Tozer v. Charles A. Krause Milling Co.*, supra. Similarly, a clerical error by defendant's former counsel did not bar vacation of a default judgment in *Horn v. Intelectron Corp.*, 294 F.Supp. 1153 (S.D.N.Y.). An attorney's mistake in not filing a defense was an excusable mistake of the party under the approach taken in *Transport Pool Div. v. Joe Jones Trucking Co.*, 319 F.Supp. 1308 (N.D.Ga.). When the carelessness cannot be attributed to an officer or agent in charge of litigation, a federal court has vacated a default judgment. *Ellington v. Milne*, 14 F.R.D. 241 (E.D.N.C.). Some federal courts have even stated that the mistake need not always be excusable in order to vacate a default judgment. *Teal v. King Farms Co.*, 18 F.R.D. 447 (E.D.Pa.); *Rasmussen v. W. E. Hutton & Co.*, 68 F.R.D. 231 (N.D.Ga.).

The federal courts have, however, prevented abuse of their rule by refusing to vacate default judgments that result from neglect which cannot be condoned. *Ben Sager Chemicals International, Inc. v. E. Targosz & Co.*, 560 F.2d 805 (7 Cir.). There the court refused to vacate a default judgment because no satisfactory justification was given for the attorney's admitted neglect. In another case the defendant's clerical error prevented the formal notice from reaching the proper desk. *Greenspun v. Bogan*, 492 F.2d 375 (1 Cir.). The court refused to vacate the default judgment, however, because three additional mailings of papers had been made which should have put the defendant on notice.

Federal courts couple the excusable neglect ground with a requirement that the defaulting party show he has a meritorious cause or defense in the main action. *Central Operating Co. v. Utility Workers of America*, 491 F.2d 245, 252 (4 Cir.) ("In order to obtain relief under Rule 60(b)(1), a party must show that he had an acceptable excuse for lapsing into default *and* that he has a meritorious defense to the action."); *Wokan v. Alladin International, Inc.*, 485 F.2d 1232, 1234 (3 Cir.) ("On a motion to set aside a default or a default judgment, the moving party must show that he has a meritorious defense."). The combination of these requirements assures that a default judgment is vacated only when the merits of the main case itself also justify that result.

Our rules already require a showing of a meritorious cause or defense: "Unless the pleadings in the original action alleged a meritorious action or defense the petition shall do so." Rule 253(a). By changing the standard of rule 252(e) from "unavoidable"

to "excusable," our rules would follow the more flexible federal approach. Such a change would allow us to avoid the undesirable result which is necessary here and to apply the approach I have quoted from *Tolson v. Hodge*, supra, 411 F.2d 123, 130 (4 Cir.).