**EMBASSY TOWER CARE, INC.**
d/b/a Embassy Tower Care
Center, Inc., Appellee,

v.

**Imogene TWEEDY, Appellant.**

No. 93–476.

Supreme Court of Iowa.

May 25, 1994.

Joseph G. Basque of Legal Services Corp. of Iowa, Sioux City, for appellant.

Steven R. Jensen of Crary, Huff, Inkster, Hecht & Sheehan, P.C., Sioux City, for appellee.

Considered by HARRIS, P.J., and LAVORATO, NEUMAN, ANDREASEN, and TERNUS, JJ.

NEUMAN, Justice.

This is an appeal by defendant Imogene Tweedy from a default judgment entered against her for care and services provided by plaintiff Embassy Tower Care Center (Embassy). The principal issue on appeal is whether a claim of "newly-discovered" evidence under Iowa Rule of Civil Procedure 252(f) may be relied upon to set aside a default judgment. The district court denied Tweedy's petition to vacate on this and other grounds urged, modifying the judgment downward after adjusting for additional services and credits. We affirm.

Imogene Tweedy is a seventy-five-year-old woman who has been bedridden with multiple sclerosis for over thirty-five years. The disease has seriously impaired her sight. In May 1991, after overdosing on medication, she was committed to Embassy pursuant to a court order authorized by Iowa Code section 125.75 (1991). She resisted placement at the facility, and thereafter refused to pay for the care she received. Six months later, Embassy attempted to involuntarily discharge Tweedy for nonpayment of bills, but abandoned its efforts upon learning that Medicaid benefits would be approved to cover her financial obligation. Embassy nonetheless filed suit against Tweedy for breach of contract, seeking damages for the full cost of her stay. Tweedy failed to answer the petition.

On January 9, 1992, Embassy obtained a default judgment against Tweedy for $23,337.50. Tweedy claims she first learned of the adverse judgment when served with garnishment papers the following November.

In that same month, Embassy again attempted to discharge her from the facility. It also initiated involuntary conservatorship proceedings on the belief that Tweedy was physically unable to manage her affairs. Approximately one month later, a hospital referee found that Tweedy's court commitment was no longer valid and discharged her to her home.

Tweedy filed a petition to vacate the default judgment under Iowa Rule of Civil Procedure 252. Following a hearing, the court denied the petition. It reduced the prior judgment to $14,815.80, however, to reflect sums allegedly owed by Tweedy for her entire stay less retroactive Medicaid benefits received by Embassy in the interim. This appeal by Tweedy followed.

Tweedy claims the district court erred in finding that (1) rule 252(f) does not apply to default judgments, (2) no irregularity occurred in the service of the petition, and (3) she was not of unsound mind during the proceedings. She also contends the judgment violates the principles underlying Iowa Rule of Civil Procedure 235. We shall address the arguments in turn.

## I. *Petition to Vacate.*

Pertinent to this action, Iowa Rule of Civil Procedure 252 permits the court to correct, vacate, or modify a final judgment, or grant a new trial, on the following grounds:

> (b) irregularity or fraud practiced in obtaining the same;
>
> (c) erroneous proceedings against a minor or person of unsound mind, when such errors or condition of mind do not appear in the record;
>
> . . . .
>
> (f) material evidence, newly discovered, which could not with reasonable diligence have been discovered and produced at the trial and was not discovered within the time for moving for a new trial under R.C.P. 244.

The trial court is vested with considerable discretion when ruling on a petition to vacate judgment. *Kreft v. Fisher Aviation, Inc.,* 264 N.W.2d 297, 303 (Iowa 1978). Its ruling is subject to reversal on appeal only upon a finding that discretion has been abused. *Id.*

■ A. *Newly-discovered evidence.* Tweedy first seeks to vacate the default judgment under rule 252(f), alleging "newly-discovered" evidence that Embassy failed to obtain a recommitment order or file reports with the court within thirty days of Tweedy's commitment as required by Iowa Code sections 125.85 and 125.86. Due to Embassy's noncompliance with these statutory directives, Tweedy argues, she owed no financial obligation for time spent at the facility beyond the expiration of thirty days. The court denied Tweedy's petition to vacate on this ground, reasoning that this subsection of the rule was limited in its application to cases where a prior trial on the merits had been held. We agree.

When the language of a statute is plain, and its meaning unambiguous, we are not permitted to search for intent beyond the express terms used. *State v. Neary,* 470 N.W.2d 27, 29 (Iowa 1991). By its terms, rule 252(f) applies to cases where alleged new evidence could not have been "discovered and produced *at the trial.*" (Emphasis added.) Newly-discovered evidence is proof which "existed at the time of *trial,* but which, for excusable reasons, the party was unable to produce at that time." *Mulkins v. Board of Supervisors,* 330 N.W.2d 258, 261 (Iowa 1983) (emphasis added). The rule's application is further limited by providing that the new evidence could not have been discovered within the time for moving for a *new trial* under rule 244. As we have previously noted in the criminal context, "[l]ogic would suggest that the concept of *new* trial should have as its predicate the existence of a *former* trial." *State v. Alexander,* 463 N.W.2d 421, 422 (Iowa 1990).

We believe that the plain language of rule 252(f) makes clear the intent that it applies only when a trial has previously been held. Indeed, it would be incongruous to apply a rule governing newly-discovered evidence to a case in which no evidence was ever produced. *See id.* (court must interpret statutes in manner that avoids absurd results). We conclude the district court correctly inter-

preted and applied the rule. No abuse of discretion has been shown.

B. *Irregularity.* Tweedy next contends that the default judgment should be set aside for "irregularity" under rule 252(b). We have defined irregularity as

> [t]he doing or not doing that, in the conduct of a suit at law, which, conformably with the practice of the court, ought or ought not to be done. Violation or nonobservance of established rules and practices. The want of adherence to some prescribed rule or mode of proceeding; consisting either in omitting to do something that is necessary for the due and orderly conducting of a suit, or doing it in an unseasonable time or improper manner.

*Forsmark v. State,* 349 N.W.2d 763, 767 (Iowa 1984) (quoting Black's Law Dictionary 744 (5th ed. 1979)). Tweedy urges that the procedures Embassy employed in serving the petition and obtaining the judgment were improper. The record, however, does not bear out her contentions.

■ Iowa Rule of Civil Procedure 56.1(a) authorizes personal service of a petition "[u]pon any individual aged eighteen years or more who has not been adjudged incompetent . . . by serving the individual personally." Tweedy alleges a failure by Embassy to observe this rule based on her lack of recollection of ever being served. At the hearing on her petition to vacate, however, Tweedy acknowledged that she "probably" received the court papers. Consistent with this recollection, the return of service certifies that Tweedy was personally served. That fact was further confirmed by Alexander Wilford, Embassy's administrator at the time. The record, therefore, supports the court's finding that Embassy personally served Tweedy with a copy of the petition in accordance with rule 56.1(a).

■ Tweedy claims further irregularity in the fact that Embassy never explained the petition to her despite its knowledge of her inability to read. Nothing in rule 56, however, requires that papers be read to the recipient. *See Harrington v. City of Keokuk,* 258 Iowa 1043, 1050, 141 N.W.2d 633, 638 (1966) (duty to read or offer to read original notice deleted from the rule). Moreover, Tweedy conceded that Embassy staff attempted to read the papers to her. The effort was thwarted when she ordered them out of her room, noting she "didn't think it was any of their business." Tweedy testified that her grandson read all papers that arrived for her. Because Embassy was under no obligation to read the petition to Tweedy, and any failure to understand the suit stemmed from her own actions, the district court properly found that she failed to prove any irregularity within the meaning of rule 252(b). *See Hastings v. Espinosa,* 340 N.W.2d 603, 608 (Iowa App. 1983) (burden on movant to prove good cause to vacate default).

■ C. *Unsound mind.* Finally, Tweedy contends that the default judgment should be vacated under rule 252(c) because she was of "unsound mind" during the proceedings. Again, however, Tweedy's claim must fail for lack of proof. Nothing in the record suggests that she suffers from any mental incapacity. Indeed, a psychiatric evaluation performed in late 1991 concluded that she was mentally competent. Although Tweedy points to Embassy's effort to place her under involuntary conservatorship as evidence that she was of unsound mind, we note this action occurred long after the default judgment, thus negating its relevance on the issue. *See Avery v. Harms Implement Co.,* 270 N.W.2d 646, 651 (Iowa 1978) (conservator appointed for claimant long after events giving rise to cause of action not evidence of "unsound mind" under rule 252(c)). In addition, Embassy's administrator at the time of the involuntary conservatorship proceedings testified that the action was initiated not because Tweedy was of unsound mind, but because she was unable to care for her own physical needs.

The record reveals that Tweedy has never been placed under involuntary conservatorship nor has she ever been adjudged incompetent. Because Tweedy failed to prove she was of unsound mind when the default was taken, the district court did not abuse its discretion in denying her petition to vacate on this ground.

## II. *Modification of the Judgment.*

Although Embassy prevailed on the rule 252 grounds discussed above, it admitted that an adjustment to reflect Medicaid payments received post-judgment would be appropriate. To correctly offset all payments received for Tweedy's care, however, the court also added post-default monthly expenses that remained unpaid. While conceding the accuracy of the figures, Tweedy claims that the court's adjustment conflicts with rule 235.[1] We disagree.

At the time the default judgment was entered, Tweedy owed Embassy in excess of $23,000 because no Medicare credits had yet been received. Thus, in accordance with rule 235, the judgment was consistent with the petition and did not exceed what had been demanded. The judgment as ultimately adjusted likewise comports with the rule. At $14,815.80, the final judgment represented a substantial decrease from the relief originally sought. The judgment is hereby affirmed.

**AFFIRMED.**

---

1. The rule provides:
   The judgment may award any relief consistent with the petition and embraced in its issues; but unless the defaulting party has appeared, it cannot exceed what is demanded against him in the petition as limited by the original notice.